## OPENING OF RUAN STREET.
## GRADE OF WASHINGTON STREET.

APPEALS BY J. A. CAMPBELL AND A. FOULDS FROM THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued April 8, 1889.

Re-argued January 6, 1890—Decided February 17, 1890.

[To be reported.]

1. The only ground upon which the classification of cities for purposes of legislation, made by the act of May 23, 1874, P. L. 230, is or can be sustained, is the evident necessity for the possession by some cities of corporate powers unsuited for others, the great differences in their population rendering necessary corresponding differences in the number, character, powers and duties of the municipal officers.
2. That classification does not authorize legislation for a class of cities upon subjects not relating to municipal affairs: a law which will not bear the test that it must apply to all members of the class to which it relates, and be directed to the existence and regulation of municipal powers, is a local law, and as such it is invalid, if it be upon one of the subjects as to which local and special legislation is forbidden by the constitution.
3. The third and subsequent sections of the act of May 6, 1887, P. L. 87,

which provide a peculiar code of procedure in road cases for cities of the first class, unlike that in use in the rest of the state, as they do not relate to the exercise of any corporate powers by such cities, or to any matters of municipal government, but are a regulation of the practice and procedure in the common law courts, are in violation of § 7, Art. III., of the constitution.

4. The constitution having made no provision for classifying litigation with reference to the location or value of the property involved, the fact that real estate is more valuable in the city than in the country, does not justify such legislation, in the face of the constitutional inhibition of local or special laws regulating the practice of courts, or authorizing the opening, etc., of highways, streets or alleys.

5. Nor is the constitutionality of such a law a legislative question: the legislature must exercise its power within the lines laid down by the constitution; and, while what it shall do within those lines is a question entirely within its discretion, the questions whether a law disregarding them shall be enforced, and whether a particular law does attempt to transcend them, are purely judicial.

6. The first and second sections of the act of May 6, 1887, are valid, because they serve to repeal an existing local system for the assessment of damages, and put in its place the system prevailing generally throughout the commonwealth. The local legislation forbidden by the constitution is that which provides a particular rule for a particular locality, not that which repeals such particular rules previously existing; the former creates diversity, the latter brings about uniformity.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

Nos. 335, 338 January Term 1889, Sup. Ct.; court below, numbers and terms not given.

WASHINGTON STREET.

On April 27, 1888, Jonathan L. Pierce and others, owners of properties on and near to Washington street, in the city of Philadelphia, presented to the court below a petition praying for the appointment of a master and a jury of viewers, under the provisions of the act of May 6, 1887, P. L. 87, to ascertain the damages resulting to the properties of the petitioners from a change in the grade of said street, made in 1887, in accordance with an ordinance enacted in 1873 by the select and common councils of the city. Upon this petition, the court, on May 29, 1888, appointed Mr. Thomas A. Gummey, master, and appointed also a stenographer and a jury of six for the purposes named therein.

Opinion of Court below.

On January 15, 1889, the master and jury made a report assessing damages in favor of the petitioners. On the same day, the court, on application of the city of Philadelphia, granted a rule upon all other parties in interest to show cause why the appointment of the master and jury should not be quashed. After argument, the court, on January 31, 1889, made the rule absolute, ARNOLD, J., delivering the following opinion :

A petition was filed on April 27, 1888, praying for the appointment of a master and jury of view to ascertain the damages caused to the property of the petitioners by raising the grade of Washington street, in the Twenty-first ward of the city of Philadelphia. The application was made expressly under the act of May 6, 1887, P. L. 87, and in pursuance thereof a jury, master and stenographer were appointed. They entered upon their duties and filed a report on January 15, 1889. The city solicitor has obtained a rule to quash the proceedings, on the ground that the act of 1887 is unconstitutional, because it is confined in its operation to cities of the first class. We have given the matter careful consideration; and, in view of the importance of the subject and the consequences involved in our judgment, we have deemed it proper to decide the question promptly, so that our judgment may be corrected by the Supreme Court, if we are wrong, or a remedy applied by the legislature, if our judgment is correct.

A perusal of the act of 1887 will show that every one of its seventeen sections, except the fourth, contains the words " city of the first class." A careful reading will also show that the writer of the act desired to make it a general law, and that it was made special and confined to cities of the first class, by alteration and amendment. Thus, §§ 2 and 6 enact that the courts of Quarter Sessions of the several counties having jurisdiction in cities of the first class shall, etc. Now as there is only one city of the first class, Philadelphia, and that city does not lap over into an adjoining county, only one court of Quarter Sessions, and not several, has jurisdiction in it. Of course, other cities of the first class may be created by legislation or growth, or may extend over parts or the whole of two or more counties, and thus become subject to the jurisdiction of several courts of Quarter Sessions, so that there might not be any objection on the score of the remoteness of the possibility; but

Opinion of Court below.

the fact cited shows that the act was by injudicious amendment changed from its original shape, and so rendered abortive.

The objection to the act on constitutional grounds is that by confining it to cities of the first class, instead of being in force throughout the state, it is made to sin against article III., § 7, of the constitution, which provides that " The general assembly shall not pass any local or special law . . . . . regulating the practice or jurisdiction of . . . . . courts . . . . . or other tribunals; or providing or changing methods for the collection of debts," etc.; and article V., § 26, which provides that " All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, . . . . . and the force and effect of the process and judgment of such courts, shall be uniform," etc.

It requires no argument to prove that the act of 1887 regulates the practice and jurisdiction of the Court of Quarter Sessions, and a legal tribunal, to wit, a road jury, in road cases, by changing methods for the collection of debts due as damages for opening, widening, or changing the grade of streets, by a law which is not general and of uniform application, but is special and confined in its operation to cities of the first class. A reference to a few of the differences between this special and the general road law, will show how great they are. Section 3 provides for the appointment of a master, who shall preside over the meetings of the viewers, determine the admissibility of evidence, issue subpœnas, and instruct the jury upon the matters of law; that is, charge the jury. In no other part of the state is a master required in a road case, nor can a master issue a subpœna in any other case.

Section 15 provides that petitions for damages may be presented within six years after the actual opening, widening, or change of grade of any street. In all other parts of the state, the statute begins to run from the time when the regulation of the grade is altered on the plans, although the actual grading may not be done for years thereafter: Philadelphia v. Wright, 100 Pa. 235; Campbell v. Philadelphia, 108 Pa. 300. That the legislature may, by repealing a statute of limitation, revive an outlawed claim, is settled law: Campbell v. Holt, 115 U. S. 620; and the same effect may be accomplished by making the statute begin to run from a later date. That this section

Opinion of Court below.

of the act of 1887 is just, was said in Axford v. Philadelphia, 46 Leg. Int. 6, but we refrained from saying anything about its constitutionality, because the question was not mooted. If this section were in force throughout the state, there could be no objection to it. That it is not, is proof that the act is a special or a local act.

The learned counsel for the petitioners endeavored to save the act on the ground that the division of cities into three classes is permitted, and laws applying to cities in one or more of those classes have been held to be constitutional. This is true, so far as strictly municipal laws and regulations are concerned, including the titles, duties, powers, liabilities, and election or appointment of city officers; but, so far as relates to school districts, tax liens, holding of courts, fees of county officers, street-railway companies, and other matters of general government, laws limited to cities or counties by classification or population, or any other device, have been held to be unconstitutional and void: Scowden's App., 96 Pa. 422; Morrison v. Bachert, 112 Pa. 322; Scranton Sch. D.'s App., 113 Pa. 176; Philadelphia v. Haddington Church, 115 Pa. 291; Weinman v. Railway Co., 118 Pa. 192; Ayars' App., 122 Pa. 266; Shoemaker v. Harrisburg, 122 Pa. 285.

It was urged in argument that this motion to quash ought not to be granted because of the delay in making it, which, it is said, estops the city authorities; and we have been moved to wait and decide the question on exceptions to the report. Aside from the doubt whether a municipality can be bound by an estoppel, before an assessment of damages has been made and paid, there can be no doubt that an unconstitutional law may be questioned at any stage of the proceedings under it, and by any of the different modes of raising the question. If the law is unconstitutional, further and useless expense and litigation should be prevented.

The wisdom of such elaborate and unduly prolonged inquiry in road cases, with the attendant expense to the county, is a matter for the legislature to consider; but it is my opinion, that since the constitution gives the right of appeal to a jury in court by parties dissatisfied with the award of the road viewers, it would be better to have the viewers consist of from three to six persons, one of whom should be learned in the law,

Statement of Facts.

to draw the report, to notify all persons who may be affected
by the proceedings to file their claims in writing, with such
detail and affidavits of experts as they may see fit to present,
and require the viewers to decide all questions of values, dam-
ages, and benefits impartially and according to their best judg-
ment within thirty days, unless the time shall be extended by
the court.   The right to appeal to court affords ample protec-
tion against insufficient or excessive awards.   Such is the law
and practice in several of our sister states.   As, under the law
of this state, the viewers may base their awards of damages
upon their own judgment or inspection, without regard to the
testimony: Antoinette Street, 8 Phila. 461 ; Barbadoes Street,
8 Phila. 498, there is no longer any necessity for a drastic ex-
amination and cross-examination of witnesses, in what has now
come to be a mere preliminary inquiry.

Being of opinion that the act of May 6, 1887, is unconsti-
tutional, we make absolute the rule to quash.[1]

Thereupon J. Addison Campbell, one of the petitioners, took
the appeal to No. 335, specifying that the court erred:

1. In making absolute the rule to show cause, etc.[1]

2–4. In holding the act of May 6, 1887, P. L. 87, to be un-
constitutional.

RUAN STREET.

On October 19, 1887, Joseph F. Brett and others, residents
of the Twenty-third ward of the city of Philadelphia, presented
to the court below a petition setting forth that Ruan street in
said ward, between Edwards street and Frankford avenue, was
a street laid down upon the city plan, had been duly confirmed,
and that public necessity demanded that it be opened between the
points named ; praying for the appointment of a jury of view
to pass upon the opening thereof and assess damages and ben-
efits, etc., and for the appointment of a master to preside at the
meeting of the viewers, in accordance with the act of May 6,
1887, P. L. 87.   On October 31, 1887, the court appointed Mr.
Joseph J. Broadhurst, master, a jury of six viewers, and sub-
sequently a stenographer, to take down the testimony heard
by the jury.

On June 22, 1888, the master and jury reported, finding in
favor of the opening of Ruan street as prayed for in the peti-

tion, awarding to one of the property owners affected by the opening damages in the sum of $4,000, and assessing a part of that sum as benefits upon other property owners among whom was Albert Foulds. Exceptions to the report were thereupon filed by Albert Foulds, the fifth thereof being that the act of assembly under which the jury was appointed was unconstitutional. After argument, the court in banc dismissed the exceptions, without opinion filed so far as shown, whereupon Albert Foulds took the appeal to No. 338, specifying that the court erred:

1. In dismissing the appellant's fifth exception.

The two cases were argued together in the Supreme Court on April 8, 1889, by *Mr. John Douglass Brown, Jr.* (with him *Mr. William C. Hannis*), for the appellant in Washington Street; by *Mr. J. Howard Gendell*, for the appellant in Ruan Street, and by *Mr. Charles F. Warwick*, City Solicitor, (with him *Mr. E. Spencer Miller* and *Mr. Abraham M. Beitler*, Assistant City Solicitors), for the city of Philadelphia, appellee, in each case.

On October 21, 1889, a judgment of affirmance was entered in the case of Ruan Street, opinion by Mr. Justice MITCHELL: see Ruan Street, 24 W. N. 460; but on October 30, 1889, the court made an order, per curiam, withdrawing the opinion for further consideration, and directing that the record of the case be retained by the prothonotary. An additional order was filed November 12, 1889, as follows:

PER CURIAM:

These two cases were argued together, but the questions raised in Ruan Street appearing to rest upon different sections of the act of 1887, and time being important to the many cases in which the interests of the city of Philadelphia were involved, the opinion in Ruan Street was filed before the determination of Washington Street. Further consideration of both cases, however, has shown us the desirability of having the whole act before us at the same time. We therefore order a re-argument in both cases, and that they be put at the head of the Philadelphia list, next after capital cases, if any, and to be argued without limitation as to time.

Arguments.

—Both cases were re-argued together on January 6, 1890.

*Mr. John Douglass Brown, Jr.,* (with him *Mr. William C. Hannis*), for the appellant in Washington Street:

1. The enactment of regulations concerning city streets may properly be based upon and framed with reference to a classification of the cities. In Wheeler v. Philadelphia, 77 Pa. 338, the leading case upon the constitutionality of the classification of cities, it was sustained upon the ground of necessity. The language used in the opinion, in that case, shows that the matter of street regulation was considered by the court a proper subject in reference to which to classify cities. For, from the illustration given, viz., that the legislature could not open or vacate a particular street in a city of one of the classes, the inference is irresistible that a general law as to the opening of streets for any one of the classes, is within the legislative power. Unless later decisions have modified that case, we may regard the point now under consideration as of little doubt.

2. An analysis of those decisions will show that they have not impaired the force of Wheeler v. Philadelphia; and any statutes which have been held unconstitutional, were so held, either because of faulty classification, or specialization under the guise of classification, or else because relating to a subject as to which classification is unconstitutional, not being justified by necessity: Kilgore v. Magee, 85 Pa. 401; Commonwealth v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422; Davis v. Clark, 106 Pa. 377; McCarthy v. Commonwealth, 110 Pa. 243; Morrison v. Bachert, 112 Pa. 322; Scranton Sch. D.'s App., 113 Pa. 176; Scranton v. Silkman, 113 Pa. 191; Philadelphia v. Haddington Church, 115 Pa. 291; Evans v. Phillipi, 117 Pa. 226; Weinman v. Pass. Ry. Co., 118 Pa. 192; Reading City v. Savage, 120 Pa. 198; s. c. 124 Pa. 328; Ayars' App., 122 Pa. 266; Shoemaker v. Harrisburg, 122 Pa. 285; Berghaus v. Harrisburg, 122 Pa. 289. The necessity for classification is not confined by the decisions to "strictly municipal laws and regulations."

3. Assuming that an act relating to streets in cities of the first class may be constitutional, is there anything in the act of May 6, 1887, P. L. 87, which offends against constitutional

requirements? The court below held that it violates three provisions of the constitution. The first of these is that part of clause 17, § 7, art. III., prohibiting local or special laws regulating practice or jurisdiction in courts or other tribunals, changing the method of collecting debts, etc. The words "local or special laws" in that section, occur in connection with an enumeration of a variety of subjects, as to some of which a law may be both local and special, and as to others of them laws can be special only, such as "granting divorces," etc. This shows that some of the clauses relate exclusively to special laws, because as to their subjects local legislation is impossible. Under this head falls the clause as to regulating practice or jurisdiction "in any proceeding before courts," etc., and the object of the provision was simply to prevent legislative interference between individuals in a pending case. The proceedings under the act of May 6, 1887, can in no sense be regarded as a method of collecting a debt, and, besides, the provision on that subject is shown by the context to be supplementary to the preceding and to have the same application. Another part of the constitution said to be violated is § 21, article III. The appellant in Ruan Street argues that the act is invalid, because proscribing a period of six years as the limitation of actions for damages, for the reason that under Hannum v. West Chester, 63 Pa. 475, such actions against individuals would not be barred for twenty-one years. The case seems to be authority for exactly the contrary rule, and the act of 1887 reads as though drafted to conform to that decision: see Grape Street, 103 Pa. 121.

4. The court below, however, holds the act of 1887 invalid because it makes the limitation run from the physical change of grade, instead of the paper change, saying that in other parts of the state the rule is otherwise. This appears to be a mistake. The cases cited, Philadelphia v. Wright, 100 Pa. 235, and Campbell v. Philadelphia, 108 Pa. 300, were decided under a local act, peculiarly worded. The first general law on this subject is the act of May 24, 1878, P. L. 129, which has been interpreted by the Common Pleas courts to the effect that the statute runs from the physical change: Craft v. South Chester, 2 Pa. C. C. R. 508. See also New Brighton Bor. v. U. P. Church, 96 Pa. 331; Hendrick's App., 103 Pa. 358; Grape

Street, 103 Pa. 121. In the case of opening or widening a street, the injury to the property owner arises when the actual work is done: City of Pittsburgh, 2 W. & S. 320; Funk v. School District, 18 W. N. 447; Easton v. Walters, 18 W. N. 117; Easton v. Rinek, 116 Pa. 1; Volkmar Street, 124 Pa. 320. The reasoning of these cases applies with equal force to changes of grade, and has been so applied under the act of 1878. In providing that it shall so apply in Philadelphia, the act of 1887 was therefore but declaratory of the general law. The act is said to offend, also, against § 26, article V., providing for uniformity in the organization, jurisdiction and powers of courts of the same grade. But it is not a law relating to courts. It relates to streets in cities of the first class, and is general and of uniform operation in all such cities. If a law is general for one purpose it must be for all. It cannot be a general law so far as it relates to the affairs of cities, and at the same time a special law relating to courts.

5. Since the act of June 13, 1836, P. L. 551, the Quarter Sessions has been the appropriate tribunal in road cases; and under § 27, act of February 2, 1854, P. L. 37, injuries to property resulting from a change of grade have been redressed in Philadelphia by a proceeding in that court ever since 1854. That section was not repealed by the act of June 1, 1885, P. L. 37: Schuler v. Philadelphia, 22 W. N. 161. The act of 1887, therefore, conferred upon the Court of Quarter Sessions no new jurisdiction. If it be unconstitutional, jurisdiction exists under the act of 1854. But the argument in support of this jurisdiction may be rested on the broader ground, that the act of 1887 was an attempt to give a complete system of street law to cities of the first class. It is said that the procedure established by it differs from that in other courts, in that a master is required in a road case in no other part of the state. The constitution was not intended to deal with details such as this. If it had been, the words " practice and procedure " would have been added to the words " organization, jurisdiction and powers," in § 26 of article V., particularly as these words are to be found in the Illinois constitution from which we borrowed this section of our own. It was not intended that a necessary law for a great city should be nullified, simply because its operation entails upon the judges of certain courts additional duties.

Arguments.

This is not the evil which was in the minds of the people when they adopted the fifth article of the constitution. A constitution is not to receive a technical construction: Commonwealth v. Clark, 7 W. & S. 127; Morrison v. Bachert, 112 Pa. 322; and a statute can be declared void, only when it violates the constitution clearly, palpably and beyond doubt: Sharpless v. Philadelphia, 21 Pa. 147; Speer v. School Directors, 50 Pa. 150.

*Mr. B. Daniels* and *Mr. J. Howard Gendell*, for the appellant in Ruan Street:

1. The statute in question is unconstitutional. It violates § 7, article III., of the constitution. If it be either special or local, and relate to any of the subjects specified in that section, it is invalid. That it relates to the opening, etc. of streets in certain localities, or more accurately in one locality only, to the collection of debts, to liens, and to the practice, jurisdiction and proceedings of the courts in that locality, is clear. Can it stand simply because it calls the locality "cities of the first class?" Such words as city, state, etc., have different meanings. They designate bodies politic, having but not being a locality, and they also mean a certain locality having definite bounds. Philadelphia, the one city of the first class, is a person, when it exercises its corporate powers. In quite a different sense it is a mere locality, a tract of land bearing that name. It is in the latter sense that it is said to have streets in it, and it is in the latter sense that the phrase "cities of the first class" is used in the act of 1887; it is usually governed therein by the preposition "in," and necessarily relates to physical existence and locality.

2. The act nowhere refers to cities as municipalities or to their municipal functions. In no reported case has such legislation been permitted. Wheeler v. Philadelphia, 77 Pa. 338, and Kilgore v. Magee, 85 Pa. 401, both arose upon statutes relating to cities as municipalities having "affairs." A person has affairs, but a locality has not. When a law relates to the affairs of cities, they may be classified according to their own characteristics, but classification is not permissible as a basis for laws regulating the rights of persons and property within their territory: Philadelphia v. Haddington Church, 115 Pa.

291; Weinman v. Pass. Ry. Co., 118 Pa. 192; Davis v. Clark, 106 Pa. 377; Betz v. Philadelphia, 21 W. N. 155; Scranton v. Silkman, 113 Pa. 191; Commonwealth v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422; McCarthy v. Commonwealth, 110 Pa. 243; Scranton Sch. D.'s App., 113 Pa. 176; Strine v. Foltz, 113 Pa. 349; Evans v. Phillipi, 117 Pa. 226. The classification in this act does not grow out of the subject of opening streets, but out of another subject respecting which local legislation is prohibited, and it is upon an improper basis. The act relates exclusively to action by the courts.

3. It is suggested that the effect of § 1, of the act of 1887, is to bring the law in cities of the first class into harmony with the law elsewhere. Such cannot possibly be the result. If the act of May 14, 1874, P. L. 164, consolidating the two juries, extends to plotted streets, this section is absolutely inoperative, and it is not worth while to separate it from the remaining sections and hold it valid. That the act of 1874 does not so extend, is settled by three cases: Jackson Street, 83 Pa. 328; Magnolia Avenue, 117 Pa. 56; Brooklyn Street, 118 Pa. 640; and if it do not, the act of 1887 cannot produce such harmony, but in fact makes Philadelphia an exception. If it were otherwise, such legislation should be effected by the repeal of an old law, not by making a new one. Nor does this section relate to the performance of municipal functions; its relation is to functions purely judicial. It is an act regulating the practice of certain courts, as confined to streets in certain localities, and violates § 5, article III., as well as § 26, article V., of the constitution. The remaining sections of the act offend against the provisions of the constitution that have been cited, and many of the details are obnoxious to other provisions therein.

4. The third and fourth sections, for example, in providing for a master to preside over the jury, create in certain counties a tribunal heretofore unknown to the law, and now unknown outside of those counties. The suggestion that the words "and judicial proceeding or inquiry" in § 7, article III., of the constitution, relate to individual cases, overlooks the alternative prohibition against laws either special or local. The suggestion that a master may be appointed at all events, under the general power of the court, is negatived by Forbes Street,

Arguments.

70 Pa. 125. Nor is the inquiry whether injury was done in this particular instance pertinent. The proceeding is a statutory one, and before Albert Foulds can be charged with the payment of damages awarded to other persons, the law must be followed strictly. Besides, the injury cannot be made to appear judicially; for, if the act is unconstitutional, the proceedings before the master and jury are not part of the record: Kensington etc. Turnpike, 97 Pa. 260. So, § 10 introduces new features into the law in cities of the first class by providing for the assessment of benefits upon changes of grade, and, as it is restricted to opening, etc., by virtue of the powers now vested in the municipal authorities of such cities, it falls directly within the ruling of Commonwealth v. Patton, 88 Pa. 258, and like cases.

5. Section 11, providing for a claim against properties benefited, is within the decision in Philadelphia v. Haddington Church, 115 Pa. 291, and as this claim is to be collected as municipal claims in cities of the first class are now by law collected, and there is no act regulating proceedings on municipal claims in such cities, all the acts relating to Philadelphia by name, this provision extends laws by reference only, and offends against § 6, article III., of the constitution. The limitation enacted by § 15 is different from that applying elsewhere. The constitution repealed the one year limitation in the road law of June 13, 1836, P. L. 551: Grape Street, 103 Pa. 121; but it did not thereby establish a six years' limit; there is no limit short of twenty-one years: Hannum v. West Chester, 63 Pa. 475. Some recent cases have incautiously assumed that a petition must be presented within six years, but there is no direct decision to that effect, and any such limitation must fall, because there cannot be different rules applicable to corporations and to individuals. Without going over all the details of the act, we submit that so many of them are unconstitutional that its entire frame work will be destroyed by their elimination, and that the decision of the court below in Washington Street is sound.

*Mr. E. Spencer Miller* and *Mr. Abraham M. Beitler*, Assistant City Solicitors (with them *Mr. Charles F. Warwick*, City Solicitor), for the city of Philadelphia, appellee in each case:

1. These cases come before the court in somewhat peculiar form.   While the city is appellee in each, it is sought in one case to sustain the constitutionality of certain sections of the act of 1887, and in the other case to assail other sections as unconstitutional.   The decisions of the court below coincide with the city's view upon both questions.   The act is not an indivisible unit, but presents a number of distinct and separable objects which owe their grouping in one statute to the comprehensive scheme of the draughtsman, who designed an act in the nature of a code.   No valid reason can be shown why that part of the act designed to enable a single jury and the court to consider, at the same time, the expediency of opening a street, and the damages resulting therefrom, should fall, merely because other portions of the act, such as that seeking to bring within the sphere of a road jury claims for damages from a change of grade, or even that providing for the appointment of a master, may be found unconstitutional: Cooley's Const. Lim., 178.

2. The portions of the act upon which the proceeding in Ruan Street rests are constitutional.   Had the act never been passed, those proceedings would have been precisely the same, save in three particulars, viz.: there would have been two juries, one to report as to opening, and the other as to damages; there would have been no master; and the court would have had a discretion as to the appointment of a stenographer.   The presence of the stenographer is not claimed to have affected the validity of the proceedings, even if unauthorized, as he was a mere clerk.   Moreover under the act of May 24, 1887, P. L. 199, the court had authority to give him an official character. The objection to the proceedings is based upon the two other points, and the parts of the statute whose constitutionality is involved are §§ 1 to 4.   If these are constitutional, the decree in Ruan Street must stand.   And even if one or all of them be unconstitutional, the decree should not be reversed unless no other authority can be assigned for the corresponding step taken by the jury, and the appellant may have been injured by the irregularity and has done no act waiving it.

3. Even if the act of May 6, 1887, be unconstitutional, the act of May 14, 1874, P. L. 164, sufficiently warrants the jury's action in assessing damages and benefits.   The act of 1874 ap-

plies to streets in Philadelphia: Jackson Street, 83 Pa. 328;
Pearl Street, 111 Pa. 565.   Twenty-eighth Street, 102 Pa. 140,
can hardly be deemed authority against that view.   The law
was assumed to be so settled in Magnolia Avenue, 117 Pa. 56;
but in view of the importance of the question we urge a care-
ful reconsideration of the latter case and of the whole subject.
And, supposing the appointment of the master to be invalid,
the appellant in the Ruan Street case cannot now by an ex
post facto objection annul the decree, when the record of the
proceedings before the jury, made by them a part of their re-
port and therefore before this court, shows no injury to him
from the presence of the master with the jury.   Passing from
these questions, we come now to the main issue in Ruan Street,
viz.: whether §§ 1, 2, 3 and 4 of the act are constitutional.
The claim is made that they conflict with § 7, article III., of
the constitution, prohibiting local or special laws on certain
subjects, and with § 26, article V., providing for uniformity of
laws relating to courts.

4. It is submitted that the enactment directing the perform-
ance by one jury of functions previously performed by two suc-
cessive ones, is not a law "relating to courts."   It does affect
courts, but incidentally.   The like is true of the section pre-
scribing the appointment of a master.   A law governing all ac-
tions at law of a certain species is a general law and of uniform
operation, although at the time of its enactment practical con-
ditions may prevent the institution of actions belonging to that
species in the courts of one or more counties.   Do, then, the
actions governed by this statute constitute a real species or
class?   It will be found that this question, and the question
whether these sections are local or special, unite and form but
one inquiry.   The road proceedings to which the act applies
are those upon plotted streets of cities of the first class.   It is
of little importance that the form of the designation employed
is, viewed literally, one of locality.   The true nature of that
which is designated must govern, and the plain intent was to
legislate for all road proceedings having the features peculiar
to those upon highways of cities of the first class.   The law
will apply to proceedings upon every street, which will here-
after come under that designation by the growth of the city to
which it belongs.

Arguments.

5. The inquiry is, whether there is cause for discrimination in the method of procedure between streets of great cities and other streets. This inquiry should not give much difficulty. It is plain that in a very large city, where real estate values are great, and the elements of value are complex, the situation is essentially different from what it is in smaller cities. A classification is necessary, and when this is so the exact limits of each class must be left to legislative discretion. · Size of cities has frequently been held a proper basis of classification for municipal purposes, but that expression, when analyzed, is found to be only a name for those additional elements of administration which are required because of a thickening of population. Thus understood, the justice of the rule distinctly appears. Few matters require, in a greater degree than streets, the adoption of new regulations when population grows very great. This statement is confirmed by the history of the special legislation on this subject to which the disparity in size between Philadelphia and other cities has led. There can be little doubt of the propriety of the classification used in §§ 1, 2, 3 and 4.

6. In the case of Washington Street, the city contends that §§ 7, 9 and 15 are unconstitutional. These are the only portions having for their subject the transfer to a new forum of certain actions under a quasi classification, that of damages for a mere change of grade of a street previously opened, and the enactment in such cases of a new period of limitation. They might well have constituted a distinct statute, and can be cut away without involving the remainder of the act. Prior to May 6, 1887, the action in a case like the present would have been in the Court of Common Pleas : Ridge Avenue, 99 Pa. 478. By §§ 7 and 9, a transfer to the Court of Quarter Sessions is attempted. Is the class of cities having a population of over three hundred thousand proper for the application of such an enactment ? Prior to the act, actions for a change of grade were barred in six years after they accrued : Landes v. Norristown, 21 W. N. 212 ; and they accrued immediately on the change on the plans : Philadelphia v. Wright, 100 Pa. 235 ; Campbell v. Philadelphia, 108 Pa. 300 ; Forbes Street, 70 Pa. 125, 127 ; New Brighton v. U. P. Church, 96 Pa. 331 ; Hendrick's App., 103 Pa. 358. By § 15, the limitation is made to run from the physical change, and claims already barred are

thus revived. Is the same class of cities proper for the operation of this provision? To state these questions is to compel a negative answer, under the test formulated in Ayars' App., 122 Pa. 266.

OPINION, MR. JUSTICE WILLIAMS:

These cases arise under the act of May 6, 1887, and depend on the constitutionality of its provisions. It is entitled "An act relating to the opening and widening, and assessment and payment of damages and benefits for the opening, widening, and change of grade of streets in cities of the first class, and regulating proceedings therein," and it provides a system applicable only to the city of Philadelphia. The objection is now made that this act is local in its operation, while it relates to a subject upon which local legislation is forbidden by the constitution. On the other hand, it is insisted that it relates to all cities of the first class, and to a subject upon which local legislation is authorized by the classification of the cities of the commonwealth, under the act of 1874. In examining the question thus presented for decision, we will consider, in the first place, the object of the classification of cities, and the basis on which classification rests; second, the legislation which classification authorizes for the several classes into which cities are divided; third, some of the subjects upon which legislation is not authorized by our system of classification; fourth, the proper application of our conclusions to the cases before us.

The cities in this state are divided into classes by the act of May 23, 1874, P. L. 230. The object of the classification is stated in the body of the act in these words: "For the exercise of certain corporate powers, and having respect to the number, character, powers, and duties of certain officers thereof, the cities now in existence or hereafter to be created in this commonwealth are divided into three classes." The first class embraced cities containing a population of three hundred thousand and upwards. The second class included all cities whose population exceeded one hundred thousand, and did not exceed three hundred thousand. The third class was made up of all cities having less than one hundred thousand inhabitants. The object of classification being thus clearly stated in the body of the act which ordains it, we are not left to conjecture. The

VOL. CXXXII—18

legislature has declared its object in providing a system of classification to be to facilitate the convenient exercise of "certain corporate powers" necessary for the proper regulation of municipal affairs. The necessity for making such provision grows out of the differences in size and situation of the several cities, and the resulting differences in their needs as to the "number, character, powers, and duties" of the officers required for the proper and convenient government of each class. The basis of classification is the population for whose well-being the city is to provide. Whether the classification of cities for any purpose was constitutional, was a question that came to this court first in Wheeler v. Philadelphia, 77 Pa. 338, and it was upheld as necessary for the proper and convenient government of the cities of the state. This necessity was forcibly stated in the opinion of the Court, delivered by the present CHIEF JUSTICE. Speaking of the system of laws relating to the city of Philadelphia, he said: "We have but to glance at this legislation to see that the most of it is wholly unsuited to small inland cities, and that to inflict it upon them would be little short of a calamity. Must the city of Scranton, over one hundred miles from tide-water, with a stream hardly large enough to float a bateau, be subjected to quarantine regulations, and have its lazaretto? Must the legislation for a great commercial and manufacturing city, with a population approaching one million, be regulated by the wants or necessities of an inland city of ten thousand inhabitants?" The force of the argument in support of classification in Wheeler v. Philadelphia, and it is the only line of argument by which it can be sustained, lies in the evident necessity for the possession and exercise of other, and, in some respects, different, "corporate powers" by the city on the sea-board from those required by the inland city; by the city with a population of one million from those required by the city of ten thousand. These great differences in population render it necessary that there should be corresponding differences in the "number, character, powers, and duties" of the officers by whom the municipal governments are to be conducted and the municipal necessities provided for; and classification was sustained as a necessary means for enabling the legislature to make provisions adapted to secure to each class of cities the "corporate powers" and

the "number, character, powers, and duties" of the officers best adapted to its needs, without an infraction of the constitution.

With this glance at the object and basis of classification, let us proceed to inquire what kind of legislation is authorized by it. I reply, negatively, that it does not authorize legislation on subjects not relating to municipal affairs. For this reason we held that an act of assembly, relating to mechanics' liens in cities of a given class, was a local law, and forbidden by the constitution: Davis v. Clark, 106 Pa. 377. Liens may be divisible into classes by reference to their own peculiar characteristics, but not by reference to the size of the city or town in which the building subject to the lien may happen to stand. An attempt was made to classify counties by reference to the number and geographical situation of the cities they contained, but this court refused to sustain it: Scowden's App., 96 Pa. 422; Commonwealth v. Patton, 88 Pa. 258. An act relating to street railways in cities of the third class came under consideration in the recent case of Weinman v. Railway Co., 118 Pa. 192, and the act was held to be local, and therefore unconstitutional, not relating to the municipal affairs of the cities of the third class, but to certain corporations that happened to be located within them. This case was followed by Ayars' App., 122 Pa. 266, in which the general doctrine was clearly stated by Justice STERRETT, in harmony with the line of cases just cited. But, answering affirmatively, I will adopt the words of the act of 1874, and say that classification authorizes such legislation as relates to the exercise of the "corporate powers" possessed by cities of the particular class to which the legislation relates, and to the "number, character, powers, and duties" of the officers employed in the management of municipal affairs. These are the purposes contemplated by the legislature; they are the only purposes for which classification seems desirable; they are the only purposes for which it has been upheld by this court. In order that a given act of assembly, relating to a class of cities, may escape the charge of being a local law, it is necessary, as was said in Weinman v. Railway Co., supra, that it should "be applicable to all the members of the class to which it relates, and must be directed to the existence and regulation of municipal powers, and to matters of local govern-

ment." A law that will bear the application of this test is within the purposes for which classification was designed, and therefore constitutional. A law that will not bear its application is local, and offends against the constitution. Among the many subjects of legislation which classification presents, we may call attention to such as the establishment, maintenance, and control of an adequate police force for the public protection; the preservation of the public health; protection against fire; the provision of an adequate water supply; the paving, grading, curbing, and lighting of the public streets; the regulation of markets and market-houses, of docks and wharves; the erection and care of public buildings, and other municipal improvements. These are mentioned, not because they include all the subjects for the exercise of municipal powers, but as a suggestion of some of the more obvious ones, and as an illustration of the character of the subjects upon which legislation for the classified cities may be necessary. These classes are thus seen to embrace, not mere geographical subdivisions of the territory of the state, but organized municipalities, which are divided with reference to their own peculiar characteristics and needs; and the legislation to which they are entitled by virtue of such division is simply that which relates to the peculiarities and needs which induced the division. In this way each class may be provided with legislation appropriate to it, without imposing the same provisions on other classes to which they would be unsuitable and burdensome.

We come now to inquire what legislation remains forbidden to cities, notwithstanding classification. I reply that all legislation not relating to the exercise of corporate powers, or to corporate officers and their powers and duties, is unauthorized by classification. In article III., § 7, the constitution declares that the legislature shall not pass any local or special law "regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery, or other tribunals." The same section forbids the passage of any local or special law fixing the rate of interest, exempting property from taxation, changing the laws of descent, affecting the estates of minors, and many other purposes, among which is "authorizing the lay-

ing out, opening, altering, or maintaining roads, highways, streets, or alleys." It is very clear that the purpose of the constitutional provision is to require that laws relating to the several subjects enumerated in § 7 shall be general, affecting the whole state, so that the rule upon all these subjects shall be uniform throughout every part of the territory in which the constitution itself is operative. For example, there cannot be one rate of interest in cities of the first class, another in those of the second or third, and still another for the rest of the state, but the rate, when fixed by law, must apply to all parts and divisions of the state alike. The same thing is true of the law of descent, and so on, through the entire list of subjects upon which local and special legislation is forbidden. If classification can relieve against the constitutional prohibition as to one of these subjects, it can relieve as to all. If it can justify a change in the practice in the courts of law, or the proceedings to assess damages for an entry by virtue of the right of eminent domain, it can, by the same reasoning, justify a change in the law of descents, or the settlement of estates, or the rate of interest, and sweep away the entire section with all its safeguards. But a statute is not above the constitution. The classification act is subject to the limits which article III., § 7, prescribe, and it cannot transcend a single one of them. For that reason the courts of law in Philadelphia have the same jurisdiction and powers, and proceed in the same manner, as the courts in the other counties of the commonwealth. The system of practice, so far as it rests on statutory provisions, must be the same. The same proceedings are had on writs, the same method for securing the benefit of the exemption of property from levy and sale, the same writ of habeas corpus for one who is restrained of his liberty, the same procedure for one whose land is entered and appropriated to public or to corporate uses. These are the civil rights of the citizen of Pennsylvania as such, and they are not affected by the size of the town in which he lives, or the value of his land, any more than by the color of his skin. They are the safeguards provided by the constitution for the protection of the weak as well as the strong, the dweller in the country as well as the resident in "cities of the first class," and no system of classification of cities or other divisions of the state can disturb them.

It now remains for us to apply the conclusions we have reached to the act of 1887, and to the cases under consideration. That act contains seventeen sections. The first and second of these provide for the assessment of damages for the opening of streets plotted or projected by the city. The remaining sections provide a peculiar and somewhat cumbrous code of procedure in road cases for the city of Philadelphia, unlike that in use in the rest of the state. They add a lawyer to the board of viewers, who is also appointed by the court; they clothe him with the powers of a master in chancery; empower him to admit and exclude evidence without regard to the wishes of the viewers, and to seal a bill of exceptions to his rulings that is to be returned with the report for the examination of the court. The viewers are thus stripped of all power over the course of their inquiry, and have nothing left them except to fix the damages from such evidence as the master permits them to hear. It is obvious that these sections do not relate to the exercise of any corporate power of cities of the first class, or to the number, character, powers, and duties of the municipal officers, or to any subject under the control of the city government. On the contrary, they relate to the practice and procedure in the common-law courts of the county of Philadelphia, over which the city has no control, and to the adjustment of the compensation due the property holder for an invasion of his close under the right of eminent domain, a subject as exclusively within the jurisdiction of these courts as an indictment for a crime or an action of trespass quare clausum fregit. The only connection the city has, or can have, with such a proceeding, is as a party to the litigation because liable to pay the damages assessed. The city appears like any other suitor to ask or object to the appointment of viewers, or the confirmation of their report, and it is bound like any other suitor by the judgment rendered.

It was suggested on the argument that real estate is more valuable in the city than in the country, and that for this reason a different mode for assessing damages done by the opening of a highway ought to prevail. But the constitutional convention evidently did not think so. It made no provision for classifying litigation by reference to the sums in controversy, or the location of the property involved, and this is the first time I have ever heard the suggestion made that such a

classification was desirable. Courts of justice weigh legal rights in the scales of reason, not in those of commerce, and protect the citizen whose scanty possessions are in the country, with the same jealous care as the holder of corner lots in a great city. The established forms of procedure in courts of law are the same for all suitors. The value of the subject of litigation, the wealth of the litigants, their personal character, their race or previous condition, are circumstances of which the law takes no notice. The courts represent the commonwealth of Pennsylvania. Wherever they sit their process goes out in the name, and their judgments are enforced by the power of the commonwealth, and their proceedings are no more affected by the classification of cities than are those of the legislative or executive departments of the state government.

It is also suggested that the constitutionality of the act of 1887 is a legislative, and not a judicial question, and that it should be left wholly to the judgment of the legislature. This suggestion is as destitute of foundation as that we have just considered. The legislature must exercise its powers within the lines laid down by the constitution. What it shall do within these lines, is a question that addresses itself to the wisdom and discretion of its members. Whether it shall disregard them, and do that which the constitution forbids, is a question which, when such legislation is attempted, belongs to the courts. When they decline, if they ever do, to compel obedience to the constitution, all check upon legislative power will be gone, and the door to all sorts of local and special laws, which the constitution proposed to close, will be open as wide as in the worst days of omnibus legislation. What the law shall be upon a subject over which the legislature has power, is a legislative question. Whether the rate of interest shall be four per cent, or six, or ten, is a legislative question, for the legislature has ample power over the whole subject. But whether there shall be one rate in Philadelphia, another in cities of the second class, still another in cities of the third class, and one different from all these for the rest of the state, is a judicial question, because the constitution declares that laws on this subject shall be general and uniform. Local laws, providing different rates for different parts of the state, would be a violation of the constitution, and the duty of the courts

to declare them absolutely void would be plain and imperative.
So, the manner in which taxes shall be levied and collected,
and at what rate, are legislative questions. Whether the law
be wise or unwise, easy or severe in its operation, the courts
cannot interfere, so long as it is general and uniform, but a tax
of ten cents on the dollar of the last adjusted valuation of the
valuable real estate in cities of the first class, and of ten mills
on the valuation of property in the rest of the state, would vio-
late the constitution. Whether a law imposing such unjust
and unequal taxes shall be executed, is a judicial question.
Whether the proceedings in road cases shall be wholly changed,
or not, is for the legislature to determine. It may give us an
entirely new system of procedure in such cases, if it so decides,
but when it attempts to change the practice in one city, or class
of cities alone, it is attempting local legislation of a mischievous
kind, which the constitution forbids, and the question whether
such a law shall be enforced is as purely a judicial question as
it is easy to conceive.

Applying the conclusions we have reached to the act of 1887,
we hold that all the sections except the first and second are in
violation of the constitution, and must fall. What is the situ-
ation of the two remaining sections ? In answering this ques-
tion, let us see just how the law stood in the city of Philadelphia,
on the subject to which they relate, when they were passed.
The act of 1874 made it the duty of road viewers, in all cases
where they located a road, public or private, to assess the dam-
ages to be sustained by property holders, if any, unless claims
for such damages were released, and make return of such as-
sessment with their report. This was a general law, and was
intended, probably, to cover all cases where damages might be
sustained by reason of the laying and opening of public high-
ways. In Philadelphia, streets are projected by the city officers
in advance of the immediate wants of the neighborhood, and
plotted on the city plans. These are called "plotted streets."
When it is desirable to open such a street, viewers are ap-
pointed by the Court of Quarter Sessions to go upon the
ground, investigate, and report upon the necessity for such
opening. When their report is confirmed, and the opening
determined upon, another view is appointed to assess damages
done by, and benefits derived from, the opening of the new

street.  Did the act of 1874 impose the duties of both sets of
viewers upon that appointed to determine the necessity for
opening the street?  This question came first into this court in
the case of Jackson Street, 83 Pa. 328, and it was held that the
act of 1874 was inapplicable to the case of plotted streets, and
that damages must be assessed under the local laws applicable
before that act was passed.  This case was followed some
years later by Magnolia Avenue, 117 Pa. 56.  The conse-
quence of this holding was to leave plotted streets remaining
under the local system, while other streets were brought under
the general law.  The acts of 1858, 1864, and 1866 were local,
relating only to the city of Philadelphia.  Under their opera-
tion the viewers who decided to open the road had nothing to
do with the question of damages, and the viewers who adjusted
the damages had nothing to say upon the necessity for opening
the street.  This inconvenience had been removed by the gen-
eral law of 1874 as to all the streets except the plotted ones.
What remained to be done was to repeal the local system, and
extend the provisions of the general law relating to the duty
of the viewers appointed to lay out streets, to those appointed
to open streets laid out and plotted by the city.  This is effect-
ually done by the first and second sections.  It is true that the
form of the act of 1887 is not that of a general law, nor does
it in terms profess to repeal the local system, and extend the
general law in its place, but, in substance and effect, it pro-
vides for just the change needed.  The fact is of more import-
ance than the form; and the fact is, that the act of 1887 wipes
out the old system by which the necessity for opening a street
went to one view and the damages to another, and puts in its
place the provisions of the general law committing the assess-
ment of damages to the viewers whose report in favor of open-
ing made the assessment necessary.  In this way both subjects
come to the attention of the same viewers at the same time;
and upon their report both subjects come to the attention of
the court at the same time.  These sections do not simply tend
to uniformity, but they accomplish it.  Their effect is to bring
under one system, and that the system provided for the whole
state by general law, all cases of assessments of damages and
benefits upon the laying out of new, or the opening of plotted
streets.  It is true, these sections relate only to cities of the

first class; but so did the local laws which they supply.  The remedy is as broad as the evil to be corrected.  A law which repeals a local law must of necessity affect only the locality in which the local law prevailed; but it is not, therefore, a local law within the meaning of the constitution.  It does not set up, but it destroys, a local system, and thereby extends the general law over the territory previously withdrawn from its operation.  So with the act of 1887, so far as the first and second sections are concerned.  They take away the previously existing system for the assessment of damages for the opening of plotted streets, which was local, and rested on local laws, and put the system provided by general law in its place.  For this reason we think they do not offend against the constitution.

These conclusions lead us to affirm Washington Street and to reverse the proceedings in Ruan Street.  Let judgment be entered accordingly.

Mr. Justice CLARK and Mr. Justice McCOLLUM concurred in the judgment, but dissented from so much of the foregoing opinion as sustained the constitutionality of §§ 1 and 2 of the act of May 6, 1887.

MR. CHIEF JUSTICE PAXSON, DISSENTING:

The difficulty we have had in deciding this and other cases involving the constitutionality of legislation affecting classified cities, ought to admonish us that we are at sea without any recognized, intelligent rule to guide us.  We have been struggling towards " uniformity," and making that the test of the constitutionality of this class of legislation, whereas the very object of classification is to allow a different rule in the classified cities from that prevailing in the rest of the state.  I need not at this late day discuss the reasons which induced this court, in Wheeler v. Philadelphia, 77 Pa. 338, to adopt the principle of classification.  It is sufficient to say that without it there might have been a deadlock in the machinery of the government.  Our present difficulty, and in my opinion it is a serious one, I think may be fairly attributed to our departure from the principles there laid down.

The doctrine upon which that case rests, is that legislation

Opinion dissenting.

for classified cities is not local, and if it applies to classes, and
not to persons or things of a class, it is not special. There is
no other ground upon which classification can be sustained.
An act passed for all cities of a class is a general law, and not
local, for the reason that its operation is not confined to any one
city. And, if it applies to all persons or things of a class, it is
not a special law. As was said in Wheeler v. Philadelphia,
" this construction does not open the door to special legislation.
It permits legislation for classes, but not for persons and things
of a class. As an illustration, it could not be said to authorize
the legislature to open or vacate a particular street in a city of
either of the classes named in the act referred to." It was this
kind of special legislation which was the cause, in a great meas-
ure, of the adoption of this feature of the constitution. It had
often happened that, when the courts or the councils of a city
had refused to open a particular street, interested parties would
procure the passage of an act of assembly ordering such open-
ing. This was the evil which was prohibited by the constitu-
tion, and it can no more exist now under classification than it
can without it.

If, then, legislation for classified cities is neither local nor
special, it does not come within the prohibition of article III.,
§ 7, of the constitution. It follows, logically, from this, as I view
it, that it is for the legislature to say what legislation is needed
for a classified city, and that it is not a judicial question at all.
This is a plain rule, easily understood, which leaves the legis-
lature free to enact such laws as the wants of the classified
cities require. Concede that it must be limited to matters af-
fecting their government, what can be more vital to the good
government and welfare of a city, and to the material interests
of its inhabitants, than the control of its streets? Why may
not a classified city have the power to direct the opening of
streets, and the assessment of the damages therefor? Must the
damages for the widening of Chestnut street, which may amount
to millions of dollars, be assessed precisely in the same manner
as for the opening of a road in the hemlock forests of the Po-
cono mountain? Why should we have an iron-clad, inflexible
rule, which cannot be enforced without injury to the one sec-
tion or the other, when neither section demands it, or would
be benefited by it? In my opinion, all that relates to the local

Opinion dissenting.

affairs of the municipality, the control of its streets, its gas and water supply, its markets, and many other matters which might be mentioned, are proper subjects of municipal control, and may be safely left to such municipalities. As to all such matters, those communities can best govern themselves, and I do not think the constitution prohibits, or was intended to prohibit, legislation conferring upon them such powers. If one class of cities desires certain regulations regarding its streets, or any other matter affecting the welfare of its inhabitants, why should it not have them, when no other community is objecting, or is injured thereby? And why should such regulations, if conferred upon one class of cities which desires them, be forced upon another class, or upon rural districts, which do not desire them, and to whose wants they are utterly unsuited? The answer, and the only answer, to this is, we must have "uniformity." This is all very well, so far as the constitution enjoins uniformity, but in my opinion neither that instrument, nor the common good and welfare of the people, requires this principle to be carried to the extent claimed for it in the affairs of municipalities. It would be as reasonable to declare that all men should wear coats of the same size, whether they fit them or not.

I am unable to see that the opinion of the majority of the court furnishes any fixed rule by which such legislation can be measured in the future. This particular case is decided, but if it furnishes a rule by which a lawyer can safely advise his clients in reference to future legislation, unless upon precisely similar facts, I fail to see it. If the legislation in regard to streets in the cities must be uniform with the rule in all other parts of the state, upon what subjects, and to what extent, may legislation be applied to classified cities? Until this question is answered specifically, I contend we have no rule at all. We have nothing but theories, and the most astute lawyer cannot safely pronounce an act relating to classified cities constitutional, until after such act has been passed upon by this court. In other words, the general assembly may legislate for classified cities subject to the veto of this court. In my opinion it would be better to leave this whole subject to the wisdom of the legislature, where, under the constitutional division of the powers

of the government, it properly belongs.  For the reasons thus briefly indicated, I dissent from this judgment.

Mr. Justice MITCHELL concurred in this dissent.