# Allegheny County Commissioners' Case.

*Road law—Appeals—Record—Evidence—Certiorari.*

An appeal from an order of the court in relation to a public road is in the nature of a certiorari. Neither the testimony, nor the rulings of the court on the admission of evidence, nor the findings of fact however unwarranted, are brought up with the record on the certiorari.

*Jury—Grand jury—Fraud—Discretion of court—Review—Appeals.*

The action of a grand jury influenced by fraud or improper conduct may be set aside by the court. If the court, in the exercise of a proper discretion refuses to act, the appellate court will not interfere unless the facts to sustain the charge of fraud or improper conduct be such that the appellant court may say that the lower court, in thus refusing to act, abused its discretion.

*Road law—Hearing before grand jury—County commissioners.*

County commissioners have a right to be present at a hearing in a road case before the grand jury, and to state in a proper way their views as to the propriety of the public improvement contemplated.

*Constitutional law—Title of act—Road law—County commissioners—Act of May 11, 1909, P. L. 506.*

The Act of May 11, 1909, P. L. 506, entitled "An Act providing for the construction, operation, and maintenance of public highways, bridges and tunnels in the several counties of this Commonwealth; authorizing the taking of property for such improvement and providing for the compensation therefor and the damages resulting from such taking; providing for the payment of costs and expenses incurred in such construction, operation and maintenance; and authorizing the levy of a tax and the issuance of bonds to provide a fund for said purpose," is not unconstitutional as being defective in title, inasmuch as the title sufficiently indicates the change of policy on the part of the Commonwealth which extended the powers of the county commissioners over street improvements within cities and boroughs.

*Constitutional law—Uniformity of taxation—Special legislation—Road law—Act of May 11, 1909, P. L. 506.*

The Act of May 11, 1909, P. L. 506, relating to the construction, operation and maintenance of public highways, bridges and tunnels in the several counties of this Commonwealth does not violate the provision of the Constitution relating to uniformity of taxation, nor Article III, Section 7, of the Constitution, relating to local or special laws.

*Road law—Tunnel within city limits—Act of May 11, 1909, Section 16, P. L. 506.*

Under Section 16 of the Act of May 11, 1909, P. L. 506, a county is not required to ask a city for an agreement relating to a proposed public improvement, unless the city's property rights or authority are affected.

Argued Oct. 15, 1915. Appeal, No. 44, April T., 1916, by Oliver McClintock, from order of Q. S. Allegheny Co., Nov. Sessions, 1914, No. 1, dismissing exceptions to finding of the Grand Jury In re Petition of the County Commissioners of Allegheny County for the construction of a public highway tunnel. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Exceptions to finding of grand jury.

The exceptions were as follows:

1. Exceptants aver and offer to prove that the construction of a general traffic tunnel of such a length as the proposed tunnel is an experiment without precedent in this country or any other country; that the commissioners, through J. Denny O'Neil, stated to the grand jury that the construction of this tunnel was in the nature of an experiment; that such a work should not be undertaken and the public funds expended therefor until after the best expert knowledge has been consulted as to the practicability of operating a general traffic tunnel of that length; that said county commissioners have made no expert investigation of this character.

2. Exceptants show and offer to prove that a tunnel of the length of the proposed tunnel is wholly impracticable as a general traffic tunnel to be used by gasoline machines, pedestrians and general animal traffic without an expensive ventilating system, and that the estimate of the cost of installing such a system, to wit, $15,000.00, is totally inadequate.

3. That exceptants aver and offer to prove that the estimate for the excavation of the approach and the concrete work of the same from the southern portal of the tunnel to Warrington avenue is grossly inadequate, the required amount being several times the amount of the estimate.

4. The exceptants aver and offer to prove that the estimates for the purchase of the rights of way required from the portals of the tunnel to Warrington avenue on the southern terminus and to Carson street on the northern terminus of said tunnel, to wit, $5,000.00, are totally inadequate.

5. The exceptants aver and propose to prove on the hearing of these exceptions that J. Denny O'Neil, one of the county commissioners, unduly and improperly in fluenced the grand jury in their investigation of the proposed plan of the tunnel as submitted to them by declaring and insisting to the grand jury that he (J. Denny O'Neil) was elected to his present position as commissioner on the strength of his favoring the construction of the proposed tunnel or a similar one whose northern portal would be on the grade of Carson street, and that Frank I. Gosser, his opponent, was defeated because he was opposed to such a tunnel, and that, therefore, the public had demanded the construction of such a tunnel. The effect of these statements, necessarily, was to bias the minds of said jury in the consideration of the subject matter and prevent them from giving it full and fair consideration and in reaching a just and proper conclusion on the merits of the application.

8. Exceptants further show and offer to prove that

said tunnel cannot be successfully operated without the construction of a bridge across the Monongahela river at the end of said tunnel, the traffic on the Smithfield street bridge being already so overcrowded that said bridge will not be able to take care of the additional traffic of the tunnel. Exceptants show that said county commissioners have left the burden on the City of Pittsburgh of constructing said bridge.

9. It does not appear by the petition or application or elsewhere in said proceedings filed in this case by the commissioners of Allegheny County that a proper preliminary resolution deeming it expedient to construct the proposed tunnel was adopted by the county commissioners.

10. That the Act of May 11, 1909, under which the proposed tunnel is to be constructed, is in violation of Section 3, Article III, of the Constitution of this Commonwealth, for the reason that there is nothing in the title of the act to give notice that the streets or highways of municipalities may be appropriated by the county commissioners or that the said county commissioners may take any action affecting the property, rights or authority of a city for the construction, operation and maintenance of public highways, bridges and tunnels, as contemplated in the act.

11. The Act of May 11, 1909, is in violation of said Section 3, Article III, of the Constitution, for the reason that there is nothing in the title of the act to give notice that the said public highways, bridges and tunnels to be constructed, operated and maintained thereunder, may be constructed, operated and maintained within the cities of the Commonwealth.

12. The said act is in violation of said Section 3, Article III, for the reason that the title of the act is misleading, in that the title provides for the construction, operation and maintenance of public highways, bridges and tunnels within the several counties of the Commonwealth, while the act itself provides for the

construction, operation and maintenance of said public highways, bridges and tunnels only within cities of the Commonwealth, or in and between cities, townships and boroughs in the said counties of the Commonwealth.

13. Said Act of May 11, 1909, is unconstitutional, being local or special legislation in violation of Article III, Section 7, of the Constitution, for the reason that the works to be constructed under said act can only be constructed within cities, or in and between cities, townships and boroughs, and not at any other place in the several counties of the State.

14. The said Act of May 11, 1909, is unconstitutional, being in violation of the provisions of Article III, Section 20, of the Constitution.

15. The exceptants aver, and propose to prove on the hearing of these exceptions, that J. Denny O'Neil, one of the county commissioners, unduly and improperly influenced the grand jury in their investigation of the proposed plan of the tunnel as submitted to them by stating to the grand jury as follows: "The money necessary will be provided by a bond issue, and the commissioners are convinced that the increase in valuation in that section of the county that will be benefited by the tunnel will be great enough to provide money for the interest and sinking funds on the bonds. In place of an increase in taxes for 1915, the commissioners are going to make a reduction of one-half mill, which will save the taxpayers of the county $600,000.00 in round numbers."

16. The exceptants aver, and propose to prove on the hearing of these exceptions, that J. Denny O'Neil, one of the county commissioners, unduly and improperly influenced the grand jury in their investigation of the proposed plan of the tunnel as submitted to them by stating to the grand jury as follows: "I might state that practically the same tunnel was approved by the grand jury about two years ago, but it was knocked out

because the attorney who prepared the papers had forgotten to have us pass the necessary desired resolution."

The court dismissed the exceptions.

*Error assigned* was order dismissing the exceptions.

*Jas. W. Kinnear,* of *Kinnear, McCloskey & Best,* and *Ernest C. Irwin,* with them *Watson and Freeman* and *Aronson & Aronson,* for appellant.—The Court of Quarter Sessions has authority to review the findings of the grand jury upon questions of fact and may receive testimony in support of exceptions filed to the report of the jury: Walnut Street, 24 Pa. Superior Ct. 114.

The grand jury was unduly and improperly influenced in their investigation of the proposed plan of the tunnel by certain voluntary statements made by J. Denny O'Neil, one of the county commissioners, to the grand jury during the progress of the hearing.

(1) The title of the act providing for the construction and maintenance of "public highways, bridges and tunnels in the several counties of this Commonwealth," gives no notice that the county commissioners may construct and maintain such improvements within cities or boroughs of the State. The act is therefore unconstitutional: Duff v. Heppenstall Forge & Knife Co., 234 Pa. 275; Bucher v. Northumberland Co., 209 Pa. 618; Phœnixville Borough Road, 109 Pa. 44; Quinn v. Cumberland County, 162 Pa. 55; Stegmaier v. Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120; Com. v. Luckey, 31 Pa. Superior Ct. 441; Alms v. Indiana County, 45 Pa. Superior Ct. 137.

The power to open up streets in cities, making the county pay all the costs, is a new burden upon a county, of which no notice is contained in the title to the act: Phœnixville Road, 109 Pa. 44.

The act is unconstitutional, being local and special legislation in violation of Article III, Section 7, of the

Constitution: Morrison v. Bachert, 112 Pa. 322; Frost v. Cherry, 122 Pa. 417; Com., ex rel., v. Stephenson, 1 S. & R. 247.

*Harvey M. Aronson,* of *Aronson & Aronson,* for the Uptown Board of Trade, appellant.

*Edward B. Vaill* and *J. Rodgers McCreery,* with them *A. B. Hay,* County Solicitor, for appellee.—We submit that the question as to whether or not the decision of the court below was correct or erroneous is not before this court: Walnut Street, 24 Pa. Superior Ct. 114; Manheim Twp. Road, 12 Pa. Superior Ct. 279; Diamond Street, 196 Pa. 254; In re Germantown Ave., 99 Pa. 479; Highway Tunnel, 61 P. L. J. 340.

The same nicety in regard to legal evidence is not required before a grand jury as in the trial of cases before a petit jury and therefore the admission of evidence by a grand jury, not strictly legal, does not justify the quashing of an indictment: State v. Fasset, 16 Conn. 457.

The act is constitutional: Com. v. Moir, 199 Pa. 534; Daugherty's Case, 51 Pa. Superior Ct. 120; Com. v. Keystone Benefit Assn., 171 Pa. 465; McKeown's App., 237 Pa. 626; City Ave. & Germantown Bridge, 164 Pa. 394; Stegmaier v. Jones, 203 Pa. 47; Com., ex rel., v. Butler, 99 Pa. 535; Com. v. Green, 58 Pa. 226; Murray, et al., v. Keys, 35 Pa. 384; Seabolt v. Commissioners, 187 Pa. 324; Stratton v. Allegheny County, 245 Pa. 519; Pittsburgh's Petition, 217 Pa. 227; Rose v. Beaver County, 204 Pa. 372; Lehigh Coal Co.'s App., 164 Pa. 44.

OPINION BY KEPHART, J., November 29, 1915:

An appeal from an order of the court in relation to a public road is in the nature of a certiorari. Neither the testimony nor the rulings of the court on the admission of evidence, nor the findings of fact, however un-

warranted, are brought up with the record on the certiorari: Manheim Township Road, 12 Pa. Superior Ct. 279; In re Diamond Street, 196 Pa. 254. All the assignments of error relating to the admission of evidence or the conclusions of fact are overruled.

The action of a grand jury influenced by fraud or improper conduct may be set aside by the court. If the court, in the exercise of a proper discretion, refuses to act, this court will not interfere unless the facts to sustain the charge of fraud or improper conduct be such that we may say that the court, in thus refusing to act, abused its discretion: Walnut Street, 24 Pa. Superior Ct. 114.

Certain statements of County Commissioner O'Neil, made at the hearing before the grand jury, are submitted as being an intentional effort to wrongfully and improperly influence the jurors in the investigation of the desirability of the proposed tunnel. In hearings before a grand jury in matters of public importance, which are required by law to be submitted to them, wherein they are supposed to act as a check on the actions of county officials relative to the expenditure of county money, the procedure incident to the hearing is not controlled by the strict rules of law, as is required in the submission of matters to a traverse jury. The hearing should be free and open, aiming to secure the widest scope of reliable information, so that they may intelligently pass on the question before them. Their decision as to the measure of usefulness to the public of projects such as this, is to a large extent speculative, as is the decision of similar bodies on like questions. There is nothing in the law which prohibits the county commissioners or any interested citizen from appearing before such grand jury. In the protection of county monies it is the county commissioners' right to be present. They are the business managers of the county and as such, acting within their authority, they are held responsible for the successful administration of public affairs. To a large

extent they are the originators of projects such as this, looking toward the advancement of the general public welfare. Commissioner O'Neil, in stating to the jury the aims, objects and feasibility of the proposed plan' and the probabilities of largely increased future county development from its accomplishment, was clearly within his right as an official. It is not contended that anything he said to the grand jury was based upon motives of personal advantage to himself or any one interested with him but, on the contrary, it appears that he acted in good faith, honestly believing his statements would be borne out. We cannot say, in the absence of fraudulent motive, that the court abused its discretion in declining to set aside the grand jury's report.

Appellant contends that the Act of May 11, 1909, P. L. 506, is unconstitutional for the reasons: (1) that its title is defective. The title reads as follows: "No. 285. An Act. Providing for the construction, operation, and maintenance of public highways, bridges and tunnels in the several counties of this Commonwealth; authorizing the taking of property for such improvement, and providing for the compensation therefor and the damages resulting from such taking; providing for the payment of costs and expenses incurred in such construction, operation, and maintenance; and authorizing the levy of a tax and the issuance of bonds to provide a fund for said purpose." It here clearly appears that the title refers to the construction, operation, and maintenance of highways, bridges, and tunnels in the several counties of the Commonwealth. An examination of the several sections of the act will show that they exhibit a comprehensive plan whereby its purpose may be successfully carried out, and contain nothing not clearly covered by the title of the act. The title need not be an index of the contents of the act. It need only give a reasonably clear notice of the matter to be found in it: Commonwealth v. Keystone Benefit Association, 171 Pa. 465. Appellant does not argue that the title does not contain

an adequate reference to the subject-matter of the act, but urges that when effect is given the act in its widest scope, it invades a field previously covered by a system of laws which should not be disturbed, modified or in part repealed without ample notice. That the Commonwealth by many enactments has confided to cities the exclusive control of its streets and that this grant of authority to the counties was such a radical change in these laws as ought to require some specific notice of the legislative intention. In answering this argument it must be remembered that it is the duty of the courts, in passing on the constitutionality of an act of assembly of general application, to consider it so as not to localize it to one section of a community, but in the light of the purpose to be accomplished throughout the entire State and the laws already in existence relating to such purposes as they may affect the act in question. It is admitted that all the highways in the Commonwealth are within the grasp of legislative control. Cities have no vested right in their highways, their business, charter rights, corporate powers or corporate existence: Commonwealth v. Moir, 199 Pa. 534. The construction, supervision, and maintenance of highways may be taken from one municipality and given to another as the legislature may deem proper. When considered in connection with the laws affecting our highways in general, we do not regard the present legislation as being a radical or revolutionary change. It is merely another step forward along lines already laid down and extending an authority before in existence. Early in our history counties have had the exclusive control of sections of highways in each bridge they constructed thereon. Within recent years, under the county road act, they may take over portions of township roads, reconstruct and maintain them. They have been charged with the cost, supervision, and maintenance of condemned turnpikes and toll bridges and the supervision and maintenance of abandoned turnpikes. They have been au-

thorized to construct bridges entirely within municipalities connecting streets therein and over streams forming the boundaries between counties. The State highways have taken a large percentage of roads from local control. There seems to be a growing tendency to centralize this control of the main arteries of travel, either in the counties or in the State. The first change in our laws vitally affecting our road system was in the county road Act of 1895. In passing on the constitutionality of this act, the title to which was in question, and that title is substantially the same as the title being at present considered, and in discussing the counties' invasion of the exclusive control of township authorities over their roads, President Judge RICE says: Middletown Road, 15 Pa. Superior Ct. 167: "No legislator or other person reading the comprehensive title of this act would naturally and reasonably be led to suppose that a law prescribing a mode whereby what is ordinarily known and spoken of as a township road may be made a county road, would not affect the powers and duties of townships and their officers with reference to the establishment, maintenance and control of such road. On the contrary he would naturally and reasonably infer that something more was in contemplation in making such improved highways 'county roads' than a mere change of name, and that duties would be imposed and powers conferred on the county with reference to them. The title plainly invited inquiry into the body of the bill as to the nature and extent of those powers and duties, and this, under the authorities, is all that was required. We cannot see that the title is open to criticism; it certainly is not in the particular specified by the appellant." The reasoning applies with equal force to cities under the Act of 1909. The word "counties" as used in this act is broad enough to give notice to, and include, all its subdivisions and when used in legislation it reaches to each part of the county without further notice. In City Avenue and Germantown Bridge, 164 Pa. 394, it

was held under the Act of May 8, 1876, "being an act to authorize the acquisition by the several counties of this Commonwealth for the use of the county bridges, etc., that "counties" embraced the condemnation of a toll bridge within the City and County of Philadelphia. Section 16 of the present act preserves to a large extent the authority of cities over its territory which may be embraced in any proposed undertaking. The city, for all useful purposes, before granting its consent to any infringement of its rights or authority, may preserve by agreement with the county any of those rights or authority as it deems necessary. While the cost of construction and the cost of maintenance may pass to the county if the city so desires, there is nothing to prevent the city from retaining its sanitation and fire control over and along the proposed street or tunnel. We do not consider the title to the act defective.

(2) Another objection, that the act violates the constitutional provision as to uniformity of taxation, has been fully answered by this court in Middletown Road case, supra, Commonwealth, ex rel., v. Bowman, 35 Pa. Superior Ct. 410, affirmed in Clarion County v. Clarion Township, 222 Pa. 350, and recently repeated in Winters v. Koontz, in an opinion handed down last May, affirmed by the Supreme Court during the present month.

(3) Nor do we regard the act as offending against Article III, Section 7, of the Constitution, relating to local or special laws. It applies generally to all counties and their subdivisions throughout the State. Lehigh Valley Coal Co.'s App., 164 Pa. 44; Ruan St., 132 Pa. 257. If it were necessary to give full effect to the act and sustain its constitutionality by changing the word "or" to "and" there is ample authority for so doing: Seabolt v. Commissioners, 187 Pa. 318; Commonwealth v. Green, 58 Pa. 226. The act in question permits the construction of tunnels in cities, townships or boroughs or in and between cities, townships or boroughs.

(4) The objection that the consent of the city was not had as required under Section 16, is without merit. That contingency arises only when the city's property rights or authority are affected. Until that is done, the county is not required to ask the city for an agreement. It is not a condition precedent to the institution of the proceedings under the act.

The assignments of error are overruled, and the decree of the court below is affirmed.