## County Commissioners' Petition for the Construction of a Public Highway Tunnel.

*Constitutional law—Constitution of Pennsylvania, Article III, Sections 3 and 7—Statutes—Titles—Local laws—Act of May 11, 1909, P. L. 506—Validity.*

1. The legislature may not impose new burdens upon counties unless the intention so to do is clearly indicated in the title of the statute imposing the new burden.

2. The Act of May 11, 1909, P. L. 506, providing for the construction, operation and maintenance of public highways, bridges and tunnels in the several counties of this Commonwealth, discloses the legislative intent to confer upon county commissioners powers theretofore exclusively vested in the officials of cities, and also indicates that it would effect the transfer of financial burdens from municipalities to counties, without such intent or effect being disclosed in the title of the act, is violative of Article III, Section 3, of the Constitution of Pennsylvania, relating to the titles of statutes, and is void.

3. Not decided whether the act would be a local law forbidden by Article III, Section 7, of the Constitution, if it authorized the construction of tunnels, etc., in cities, or in and between, cities, townships and boroughs, and not at any other place in the several counties of the State.

Argued April 27, 1916. Appeal, No. 61, Oct. T., 1916, by Oliver McClintock, et al., from judgment of the Superior Court, affirming order of Q. S. Allegheny Co., Nov. Sess., 1914, No. 1, dismissing exceptions to report of grand jury in the Matter of the Petition of the County Commissioners for the Construction of a Public Highway Tunnel. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Appeal from the Superior Court.

The facts appear in the opinion of the Supreme Court and in 61 Pa. Superior Ct. 591.

The Superior Court affirmed the order of the Court of Quarter Sessions, dismissing exceptions to the findings

of the grand jury, approving the petition.    Oliver Mc-
Clintock, et al., appealed.

*Error assigned* was the order of the Superior Court.

*H. F. Stambaugh,* with him *Ernest C. Irwin, Watson
& Freeman, Aronson & Aronson* and *Kinnear, McCloskey
& Best,* for appellants.—The Act of May 1, 1909, P. L.
506, is defective because its title gives no notice that the
county commissioners may construct and maintain the
improvements authorized by the act within cities or
boroughs of the State: Busher v. Northumberland, 209
Pa. 618.

The act gives no notice of the new burdens which its
operation will impose upon counties: In re Road in the
Boro. of Phœnixville, 109 Pa. 44.

The title fails to indicate that the county commission-
ers are vested by the act with power to construct tunnels
and highways at public expense, within cities, whereas
before no one but the city could do so: Stegmaier v.
Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593.

*J. Rodgers McCreery,* with him *Lee C. Beatty,* County
Solicitor, for appellee.—The title gives sufficient notice
of the contents of the act: Minsinger v. Rau, 236 Pa. 327;
Commonwealth, ex rel., v. Broad St. Rapid Transit Ry.
Co., 219 Pa. 11; Middletown Road, 15 Pa. Superior Ct.
167; City Avenue & Germantown Bridge, Williams's
App., 164 Pa. 394.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1916:
This case concerns the constitutionality of the Act of
May 11, 1909, P. L. 506, entitled: "An act providing for
the construction, operation, and maintenance of public
highways, bridges and tunnels in the several counties of
this Commonwealth; authorizing the taking of property
for such improvement, and providing for the compen-
sation therefor and the damages resulting from such
taking; providing for the payment of the costs and ex-

penses incurred in such construction, operation, and maintenance; and authorizing the levy of a tax and the issuance of bonds to provide a fund for said purpose."

The commissioners of Allegheny County, under and by virtue of the power and authority intended to be vested in them by this legislation, attempted to construct a tunnel within the limits of the City of Pittsburgh; in a proper proceeding the constitutionality of the act was attacked; the Quarter Sessions decided it valid, and directed work thereunder to be proceeded with; this order was affirmed by the Superior Court, and we allowed the present appeal. Here the constitutionality of the statute is contended against on several grounds, but the chief of these is the alleged insufficiency of its title.

Before entering upon a consideration of the question just indicated, we shall briefly review the act itself. Section 1 provides that "whenever the commissioners (of any county), or a majority of them, shall, by resolution duly adopted, deem it expedient so to do, and upon approval thereof by a grand jury and the Court of Quarter Sessions," they may "cause to be constructed, operated, and maintained,......a public highway, bridge, or tunnel, or bridges and tunnels, or bridges, tunnels, subways or underground roads within the cities of this Commonwealth......"; and that any tunnel so constructed shall thereafter be a county tunnel, the duty and cost of "maintaining the same and keeping in repair" to be borne by the county. Sections 2 to 9, both inclusive, provide for procedure; the next two sections deal with the subjects of plans, estimates and contracts for improvements constructed under the act; Section 12 authorizes county commissioners "to make and enter into a contract or lease with any street railway or transportation company" for such "concurrent use" of any "public highway, bridge or tunnel" constructed by them as shall not "substantially impair or restrict the public use and enjoyment thereof,......upon such terms and conditions as shall be agreed upon," the contract or lease to be "approved

by the Court of Quarter Sessions"; Section 13 gives the same officials power and authority to levy taxes upon "all real and personal property" within their respective counties, "now or hereafter taxable for county purposes," in order "to pay all costs, damages and expenses required in locating, opening, constructing, maintaining, and repairing public highways, bridges, or tunnels constructed under the provisions of this act"; Section 14 authorizes the issuing of bonds; Section 15 provides for a sinking fund; and Section 16 is as follows: "Should any board of county commissioners, in the exercise of the powers herein conferred, deem it necessary or advisable to enter upon a highway, or highways, in any city, or borough, or take any other action affecting the property rights, or authority of such city or borough, for the purpose of constructing or maintaining a highway, bridge, or tunnel approaches, or otherwise, the consent thereto of such city or borough, by ordinance, shall be first had and obtained."

It may thus be seen we have a title, "Providing for the construction, operation and maintenance of public highways, bridges and tunnels in the several counties of this Commonwealth," with an act expressly authorizing county commissioners to lay out, open, construct, and maintain highways, bridges and tunnels, or underground roads "within cities of this Commonwealth"; a power over city works of this character such as county commissioners never theretofore had or exercised, and which, so far as it existed, for more than a century had been vested exclusively in the proper authorities of the several municipalities of the State. Again, the act places the cost and expense of constructing and maintaining such improvements "within cities" entirely upon the counties in which the municipalities affected happen to be geographically located, thereby putting upon such counties a financial burden differing essentially from any to which they had theretofore been subjected. Finally, the act empowers county commissioners to lease or contract

with "railway or transportation companies" for the use of such public highways, bridges or tunnels, thereby conferring upon county authorities the right to control highways and transportation facilities within the limits of the cities of the Commonwealth, and thus effectually interfering with the serious problems of city planning and transportation, which theretofore were exclusively within the control of municipal authorities.

It is not contended that the general assembly lacked authority to make these radical changes, but that the title here in controversy is not sufficiently clear to give notice of an intention so to do. The controlling question in the case is reduced to this: is the phrase "in the several counties of this Commonwealth," contained in the title, when taken with its context, sufficiently comprehensive to put those who might be specially interested in the subject on inquiry as to whether it was the legislative purpose to make changes of the character which this act attempts to work. The provisions of the statute deal with the subject of "highways" in cities, in the broad sense of that term. If the words, contained in Section 1, "within cities," had been omitted, and the phrase in question substituted in their place, under our law, as it stood in the year 1909, it could not successfully be contended the act would operate within the limits of municipalities: Bucher v. Northumberland County, 209 Pa. 618, 624. Although cities, geographically, are part of the counties in which they happen to be located, yet, under the law, the cities of this Commonwealth, prior to 1909, were entirely independent of counties, so far as highways and kindred subjects were concerned—power and jurisdiction in those respects being particularly reserved to the respective municipalities by Section 2 of the Act of April 15, 1834, P. L. 537, and uniformly recognized in our legislation and decisions. Hence, it is plain that had the phrase, "in the several counties of this Commonwealth," appeared in the body of the statute here under consideration (in place of the words "within the cities of this

Commonwealth"), it would not be sufficiently comprehensive to include the powers and authorities claimed by the present county commissioners; such being the case, the use of that phrase in the title before us cannot be taken as clearly suggesting even the possibility that a grant of those powers and authorities might be found in this act. Moreover, if we look at the question from another standpoint, and concede that "counties," in a sense, may include "cities," it is none the less clear that, in view of the law as it stood in 1909 and had existed for more than a century theretofore, one reading this title would naturally assume the act either applied to counties excluding cities, or, if otherwise, then that the control of highways, etc., would be governed thereunder in the usual manner, namely, within the confines of cities by their municipal authorities and without such confines by the proper county officials.

In brief, the present title fails clearly to indicate or suggest the legislative purpose to confer upon county commissioners powers theretofore vested exclusively in the officials of cities; furthermore, it fails sufficiently to indicate or suggest the transfer of financial burdens which the operation of the act would bring about. Although the accomplishment of these important features seems to be the chief purpose of the legislation, yet the title not only fails sufficiently to indicate or suggest them, but, by the use of the phrase, "in the several counties of this Commonwealth," it tends to mislead one into the belief that the act has to do with county as distinguished from city affairs, in other words, with county affairs alone. Titles with this fault have been uniformly condemned in our cases: Stegmaier v. Jones, 203 Pa. 47, 51; Dailey v. Potter County, 203 Pa. 593, 597; Mt. Joy Boro. v. Lancaster, Elizabethtown & Middletown Turnpike Co., 182 Pa. 581, 585. As to placing upon counties new burdens, without an intention so to do being clearly indicated in the title of the act in question, see In re Road in the Boro. of Phœnixville, 109 Pa. 44, 48;

Pierie v. Philadelphia, 139 Pa. 573, 583; Quinn v. Cumberland County, 162 Pa. 55, 59; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120, 123; Alms v. Indiana County, 45 Pa. Superior Ct. 137, 141; Fedorowicz v. Brobst, et al., Commissioners, 254 Pa. 338.

While, in certain specified instances, the act requires municipal consent before county commissioners can exercise their powers within the confines of a city, yet the section which deals with this subject, when applied to the facts in the present case, is not sufficiently comprehensive to overcome the faults which we have pointed out. As very properly said in the opinion of the Superior Court, municipal consent is called for "only when the cities' property rights or authority (thereover) are affected; until that is done, the county is not required to ask the city for an agreement; it is not a condition precedent to the institution of proceedings under the act." In the present instance, the commissioners did not purpose to enter upon or affect any streets or property rights of the City of Pittsburgh, or its authority thereover; hence, they did not ask or depend upon municipal consent. The part of the statute now being considered is somewhat difficult to understand (see Section 16, hereinbefore quoted), but, as we read the words employed therein, its provisions apply only where, in the course of the performance of work under the act, county commissioners enter upon or take some other action affecting the highways or property of a city. It is true, the section in question makes reference to the commissioners taking any action affecting "the property rights, or authority" of a city; but, since consent "is not a condition precedent," and the act, when it operates, deprives municipal officials of all "authority" in the premises, that word, as used in this section, is of no material significance when applied to the circumstances now before us. Whatever the proper construction of Section 16 may be, however, the fact remains that, even after a city consents to the county commissioners entering upon its streets or

property, this act takes from the municipal officials power to raise and expend the money needed for the contemplated improvement, and vests authority so to do in such commissioners, at the same time shifting the burden of the cost and expense from the city to the county, and these radical changes are made under an insufficient and misleading title. ·

Middletown Road, 15 Pa. Superior Ct. 167, 173-4, cited in the opinion of the Superior Court, is clearly distinguishable from the case at bar.   There the Act of June 26, 1895, P. L. 336, is dealt with, the title being "An act providing for the permanent improvement of certain public roads or highways in the several counties of this Commonwealth, making such improved roads and highways county roads."   This title was held sufficient because it clearly states the purpose of the legislature to make the highways affected "county roads";  thereby plainly implying that theretofore they were of another character.   In brief, the title clearly suggests that, by and through the provisions of the act, the particular highways operated upon were to be changed from their former status and made county roads.   Moreover, while the Act of 1895, supra, both in its title and body, refers to "public roads or highways," yet, in Bucher v. Northumberland County, 209 Pa. 618, 624, we state "this does not apply to a street or highway within the limits of a borough or city";  although in In re Vacation of Osage St., 90 Pa. 114, 117, we previously had said, "the word 'road,' in a proper connection, may be fitly used to designate a city street."

It is necessary to notice only one other authority relied upon by the appellees, and that is City Ave. & Germantown Bridge, Williams's App., 164 Pa. 394, which deals with certain legislation entitled, "An act to authorize the acquisition by the several counties of this Commonwealth, for the use of the county, of bridges......and for the abolition of tolls thereon."   We there held the County of Philadelphia might acquire a certain bridge

under this act; but, on p. 396, it is stated that before the date of the act neither the City nor the County of Philadelphia was "clothed with this power." Hence, there was no transfer of authority or financial burden from one to the other, as in the present instance.

In addition to providing for the construction of "bridges, tunnels, subways, or underground roads within cities," the first section of the statute here under attack further authorizes county commissioners to construct, operate and maintain such works "between cities, townships and boroughs in the several counties of this Commonwealth"; the two excerpts just quoted being connected by the words "or in and." In their third assignment, the appellants contend that these provisions constitute "local or special legislation in violation of Article III, Section 7, of the Constitution," because the public works in question "can only be constructed within cities, or in and between cities, townships and boroughs, and not at any other place in the several counties of the State"; but the views herein previously expressed make it unnecessary to consider this contention. For the reasons already given, we are of opinion that, when applied to the facts at bar, the act in controversy is clearly unconstitutional, and should have been so declared.

The last mentioned assignment is dismissed and the others are sustained; both the order of the Quarter Sessions and the judgment of the Superior Court are reversed, and the proceedings are set aside.