## Kennedy et al., Appellants, *v.* Meyer et al.

*Constitutional law — Constitution of Pennsylvania, Art. III, Secs. 7 and 11, Art. IX, Sec. 7, and Art. I, Sec. 1—Declaration of Rights—Local and special laws — Gratuities — Contractors — Encroachment on judicial prerogatives—Counties—Contracts—Work done under unconstitutional act—Curative act—Constitutionality— Acts of May 11, 1909, P. L. 506, and April 20, 1917, P. L. 90—Statutes—Construction—Bill in equity—Injunction—Dismissal.*

1. All presumptions must be drawn in favor of the validity of an act and the propriety of the legislative intention.

2. The courts are loath to hold curative acts to be special or local legislation when they are drawn to apply to all persons, things or subjects affected by the conditions to be remedied.

3. Where an act relating to counties in terms applies to all counties in the State, it is presumptively a general statute.

4. Where the legislature has power to enact the substance of the matter covered by a statute which has been declared void because unconstitutional in form, it may subsequently ratify and make legal anything done under the prior void legislation which it might previously have authorized in due form. The authority of the legislature to ratify whatever it might have authorized is beyond question.

5. The Act of April 20, 1917, P. L. 90, providing that whenever any county has entered into a contract for the construction of a public highway bridge or tunnel and the same has been completed in whole or in part, but (the county) was without power to pay for the work which had been actually done (because the act under

which such work was done had been declared unconstitutional), such contract is valid and binding on the county to the extent only that such work and construction was done or made prior to the date on which said act was declared unconstitutional, and providing for the payment of such work from the county treasury, is not a local or special law in violation of Article III, Section 7, of the Constitution and is valid.

Sample v. Pittsburgh, 212 Pa. 533, distinguished.

6. The Act of 1917 does not offend against Article III, Section 11, of the Constitution, prohibiting legislation giving extra compensation to any public officer or contractor after services shall have been rendered or contract made or providing for the payment of any claim against the Commonwealth without previous authority of law, since such act applies to counties and not to claims against the Commonwealth, and makes no provision for extra compensation but merely for compensation for work not paid for.

7. The Act of 1917 does not treat the obligations with which it deals as gratuities, such as contemplated by the constitutional inhibition in Article IX, Section 7, of the Constitution, but as moral obligations that have ceased to be legal ones merely because of defects in the statute which authorized them.

8. The legislature may impose a tax to pay the expense of a public improvement which had been made under invalid authority, and an assessment for that purpose, or payment for such improvement from the moneys of the public treasury raised by general taxation or otherwise, is not a taking or deprivation of property, and the Act of 1917 is not therefore violative of Article I, Section 1, of the Constitution.

9. The Act of 1917 is a curative act and does no more than to effectively authorize (within the restrictions of the statute) what had previously been defectively authorized by the Act of May 11, 1909, P. L. 506, and does not attempt to decide any judicial question, and is not an assumption by the legislature of judicial powers.

10. County commissioners entered into a contract under authority of the Act of May 11, 1909, P. L. 506, for the construction of a public highway tunnel. Before the completion of the work the Act of 1909 was declared unconstitutional by the Supreme Court by reason of insufficiency of its title. After the passage of the curative Act of April 20, 1917, P. L. 91, a taxpayer's bill was filed to enjoin payment to the contractor for work done on such tunnel prior to the date on which the Act of 1909 was declared unconstitutional, on the ground that the Act of 1917 was unconstitutional. *Held,* the bill was properly dismissed.

Argued Oct. 15, 1917.   Appeal, No. 144, Oct. T., 1917, by plaintiffs, from decree of C. P. Allegheny Co., July T., 1917, No. 838, in equity, dismissing bill in equity for injunction in case of Julian Kennedy, Oliver McClintock and Harry H. Willock, Citizens and Taxpayers of Allegheny County, v. Gilbert F. Meyer, Addison C. Gumbert, and Frank J. Harris, Commissioners of Allegheny County; John P. Moore, Comptroller of Allegheny County; Edward D. Friebertshauser, Treasurer of Allegheny County, and Booth & Flinn, Ltd.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Bill in equity against county commissioners and county treasurer to restrain payment to contractor on claim founded on the Act of April 20, 1917, P. L. 90.   Before SWEARINGEN, J.

The facts appear by the opinion of the Supreme Court.

The lower court sustained defendants' demurrer and dismissed the bill.   Plaintiffs appealed.

*Error assigned,* among others, was in dismissing the bill.

*Ernest C. Irwin,* with him *Watson & Freeman,* for appellants.—The Act of 1917 is void as being an assumption of judicial powers by the legislature: Swartz v. Carlisle Borough, 237 Pa. 473; Marshall Avenue, 213 Pa. 516; Hewitts' App., 88 Pa. 55; Donley v. City of Pittsburgh, 147 Pa. 348; Wyoming Street, 139 Pa. 494; People v. Board of Supervisors, 26 Mich. 22; Felix v. County Commissioners, 62 Kansas 832; The Mayor & City Council of Balt. v. Horn, 26 Md. 194; Forster v. Forster, 129 Mass. 559; DeChastellux v. Fairchild, 15 Pa. 18; Lambertson & McClelland v. Hogan, 2 Pa. 22; Greenough v. Greenough, 11 Pa. 489; Reiser v. The William Tell Saving Fund Association, 39 Pa. 137.

The Act of 1917 violates Article III, Section 11, of the Constitution.

The Act of 1917 is violative of Article IX, Section 7, of the Constitution: Kreusler v. McKees Rocks School District, 256 Pa. 281.

The Act of 1917 is local and special legislation and is void: Sample v. Pittsburgh, 212 Pa. 533.

*John O. Wicks,* with him *Lee C. Beatty, John S. Weller* and *Simon T. Patterson,* for appellees.—The Act of 1917 is not a local or special law since by its terms it applies to all contracts entered into by any county of the Commonwealth under the Act of May 11, 1909, P. L. 506: Sample v. Pittsburgh, 212 Pa. 533; Carlstadt National Bank v. Borough of Hasbrouck Heights, 83 N. J. L. 383; State ex rel. Board of Education v. Brown, 106 N. W. 477.

The act does not conflict with Article III, Section 11, of the Constitution, prohibiting the giving of extra compensation to contractors nor does it authorize a provision in contravention of Article IX, Section 7, of the Constitution. The Act of 1917 is not an assumption by the legislature of judicial powers: County Commissioners' Petition, 255 Pa. 88; Devers v. York City, 150 Pa. 208; Melick v. Williamsport, 162 Pa. 408; Creighton v. San Francisco, 42 Cal. 446; O'Brian & Co. v. County Commissioners of Baltimore County, 51 Md. 15; Thomson v. Lee County, 3 Wal. 327.

Where there is a moral obligation existing against a city, county or other municipal division of the State, which cannot be enforced at law or in equity, it nevertheless constitutes good consideration for the payment of public money and there is no constitutional limitation placed upon the legislature preventing it from legalizing such obligations: Bailey v. Philadelphia, 167 Pa. 569; Commonwealth v. Walton, 236 Pa. 220; Vare v. Walton, 236 Pa. 467; Cunningham v. Dunlap, 242 Pa. 341; Longstreth v. City of Philadelphia, 245 Pa. 233; Bellevue

Borough v. Gibson, 43 Pa. Superior Ct. 561; Justice v.
Philadelphia, 37 Pa. Superior Ct. 267; Cleveland v.
Board of Jersey City, 38 N. J. L. 259; Chester City v.
Black, 132 Pa. 568.


OPINION BY MR. JUSTICE MOSCHZISKER, January 7,
1918:

In this case a bill in equity was dismissed, and the
complainants have appealed. The learned court below
has dealt with the issues involved so satisfactorily that,
after examining and considering all the authorities cited,
we have concluded to dispose of the appeal on the
following excerpts from its opinion, with a few relevant
additions at several points, and some discussion of com-
plainants' chief contentions, which we shall add at the
end.

The court below states: "Pursuant to the Act of May
11, 1909, P. L. 506, the commissioners of Allegheny
County, on November 18, 1914, presented their petition
to the Court of Quarter Sessions......for the construc-
tion of a public highway tunnel.    In due course, the case
came before the grand jury [as required by the Act of
1909, supra], which, on December 31, 1914, approved the
project.    Exceptions were filed wherein, inter alia, the
constitutionality of the act [under which the proceed-
ings were had] was denied.    After argument, the court,
on March 13, 1915, dismissed the exceptions and ordered
the tunnel to be constructed.    Thereupon, the commis-
sioners entered into a contract with Booth & Flinn, Ltd.,
......and the contractor proceeded with the work.
June 18, 1915, an appeal was taken to the Superior Court.
.....November 29, 1915, the Superior Court affirmed
the judgment: Allegheny County Commissioners' Case,
61 Pa. Superior Ct. 591.    February 25, 1916, an appeal
was allowed by the Supreme Court.    July 1, 1916, that
court reversed the judgment of the Superior Court upon
the single ground that the Act of May 11, 1909, was
unconstitutional because its title failed to indicate the

legislative purpose......: County Commissioners' Petition, 255 Pa. 88. Prior to the decision of the Supreme Court the contractor had done work to the value of about $53,000.

"By an act approved April 20, 1917, P. L. 90, the legislature enacted that, whenever any county had [theretofore] entered into a contract or contracts for the construction of a public highway, bridge or tunnel and the same had been completed in whole or in part, but [the county] was without power to pay for the work which had been actually done [because the act under which such work was done had been declared unconstitutional], 'now by this act such contract is made valid and binding on such county, to the extent only that such work and construction was done or made prior to the date on which said act was declared unconstitutional; and such county is hereby authorized and directed to ascertain and pay for all work done and materials furnished, under the terms of said contract, to the party or parties who performed the same. [The act continues: 'Such work, or such part thereof as was actually done at the date on which said act was declared unconstitutional, shall be paid for from county funds out of the county treasury, at the prices fixed for the payment of the same under the terms of the contract so entered into, in pursuance to the terms of said act. Nothing in this act shall be so construed as to make valid any resolution or contract except to the extent that work was actually done and performed prior to the date on which said act of assembly was declared unconstitutional.']

"The commissioners......have approved the claim of Booth & Flinn, Ltd., for the value of the work done; the county controller is about to draw a warrant for its payment; and the county treasurer is about to pay the same out of county funds......The complainants, on their own behalf and on behalf of all other taxpayers who may intervene, filed this bill, wherein they aver that the Act of April 20, 1917, P. L. 91, is unconstitutional and

pray that an injunction be issued forbidding payment of the claim......The defendants demurred to the bill.

"The complainants aver that the Act of April 20, 1917, is unconstitutional because it is local and special legislation, contrary to Article III, Section 7, of the Constitution; and because it is in violation of Article III, Section 11, and Article IX, Section 7, of the Constitution. They further aver that [the act under attack is an assumption of judicial power, and that]......payment of this claim will result in depriving them of their property in violation of Article I, Section 1, [of] the Declaration of Rights; finally, that such payment will be in the nature of a gratuity to Booth & Flinn, Ltd."

The opinion sustaining the demurrer then proceeds as follows: "Article III, Section 7, of the Constitution, prohibits the enactment of 'any local or special law ......regulating the affairs of counties......' ...... The Act of 1917 [supra] in terms applies to all counties in the State, and, therefore, it is presumptively a general statute. That but one county happens to be affected by its provisions, even if such be the fact, is of no moment. Every county might have availed itself of the provisions of the Act of 1909, and that but one did so is a mere circumstance in no way affecting the generality of the Act of 1917........The act does not authorize a county to pay any one a specified amount; it gives authority to pay for [work] actually done [in any and all instances falling within the remedial provisions of the legislation]. The amount [in each case] must be ascertained by the courts in the same manner as they dispose of any other controversy. There happens to be no dispute as to the amount [in the present case], because there is no averment in the bill which raises a question of that kind. In our opinion this is not a local or special law": Swartz v. Carlisle Boro., 237 Pa. 473, 477; Carlstadt National Bank v. Borough of Hasbrouck Heights, 83 N. J. L. 383, 386; State ex rel. Board of Education v. Brown, 97 Minn. 402, 404, 408, 416, 422.

We may add to the views just quoted from the opinion of the court below that Sample v. Pittsburgh, 212 Pa. 533, 543, 544, cited by appellants, is not a case in point. There it was perfectly apparent that the act assailed was intended to apply only to a particular locality, for, as said in that case, it is a matter of general knowledge, of which the courts will take judicial notice, that only one county in the State contains two contiguous cities "separated by a stream"; hence it is to be presumed that the legislature acted upon such knowledge and intended the statute in question to apply to that one county alone. In the present instance, we do not know in how many parts of the state the Act of 1917, supra, may apply, and it cannot be presumed that the lawmakers had any greater knowledge upon the subject than we possess or that they enacted the law to fit any special case. Indeed, all presumptions must be drawn in favor of the validity of the act and the propriety of the legislative intention: Sugar Notch Boro., 192 Pa. 349, 355; Penna. R. R. Co. v. Riblet, 66 Pa. 164, 169; Likins's Petition (No. 1), 223 Pa. 456, 459-60; Com. v. Hyneman, 242 Pa. 244, 246-7. The numerous cases cited in State ex rel. Board of Education v. Brown, supra, from other jurisdictions, show how loath the courts are to hold curative acts to be special or local legislation when they are drawn to "apply to all persons, things or subjects affected by the conditions to be remedied," as is the statute now under consideration.

The court below goes on to say: "Art. III, Sec. 11, of the Constitution, prohibits legislation giving extra compensation 'to any public officer......or contractor after services shall have been rendered or contract made,' or 'providing for the payment of any claim against the Commonwealth without previous authority of law.' As this claim is not against the Commonwealth, the latter part of the section has no application. No extra compensation is given to any one by the terms of the Act of 1917......, and the claim [at bar] is not within the

mischief against which the above provision is a protection." The correctness of these views will be made plain hereinafter, when we consider the character of the claims provided for and the nature of the remedy afforded by the Act of 1917, supra.

Further on the opinion states: "Art. IX, Sec. 7, of the Constitution prohibits the legislature from authorizing the appropriation of money or the loaning of credit by a county [city, etc.] to any corporation or individual; the payment of the present claim does not violate that section in any sense." We may add to this brief quotation that the Act of 1917, supra, does not treat the obligations with which it deals as gratuities, such as contemplated by this constitutional inhibition, but as moral obligations that have ceased to be legal ones merely because of defects in the statute which authorized them. If the authority for payment contained in the act before us is a violation of this section of the Constitution, then all curative acts and ordinances which direct or authorize payments by municipalities for work done without previous authority of law, would be void; which every one knows not to be the case. We mention ordinances, for, of course, municipalities cannot lawfully do those things which the legislature is prohibited by the organic law from authorizing them to do; and Section 5 of the Act of May 23, 1874, P. L. 230, which empowers the cities of the Commonwealth, by a two-thirds vote of their councils, to pass ordinances providing for payment of honest claims against them incurred "without previous authority of law" but supportable as moral obligations, has more than once been upheld in practical application by this court: see Vare v. Walton, 236 Pa. 467, 469-70; Com. v. Walton, 236 Pa. 220; Cunningham v. Dunlap, 242 Pa. 341, 345.

The next matter enumerated for consideration is briefly but correctly disposed of in these words: "The payment of [the present] claim will not be in violation of Sec. 1 of the Declaration of Rights; this pro-

vision relates to the acquisition, possession, and protection of property. None of the property of the complainants will be taken by anything proposed to be done. They have no [special] title to any moneys in the county treasury; therefore, the payment of this claim cannot in any event deprive them of private property." We have held frequently that the legislature may lawfully impose a tax to pay the expense of a public improvement which had been made under invalid authority, and that an assessment for that purpose is not a taking or deprivation of property within the meaning of the Constitution. If power to make such an assessment exists, it follows that there is an equal right to pay for the improvement from moneys in the public treasury raised by general taxation or otherwise: Schenley v. Com., 36 Pa. 29, 57; Donley v. Pittsburgh, 147 Pa. 348; New Brighton Boro. v. Biddell, 14 Pa. Superior Ct. 207, 211.

The opinion of the court below deals as follows with the last point in controversy: "Neither is this Act of 1917 an assumption by the legislature of judicial powers, as is argued by the complainants. The contract to which they are now objecting was not before the court in the previous litigation, except incidentally. The actual controversy was as to the constitutionality of the Act of 1909, without regard to anything that had been done thereunder; hence, there was no decision upon the contract at all. Nothing could have been decided except a constitutional question. The Act of 1917 does no more than any other curative act; it effectively authorizes [within the restrictions of the statute] what had previously been defectively authorized, and there is no attempt to decide any judicial question.....The act...... is undoubtedly curative legislation; but the legislature is not prohibited from passing such acts, if the power to enact the [substance of the prior] defective legislation existed. If there was such authority, that which was declared invalid may be validated by a subsequent statute: Donley v. Pittsburgh, 147 Pa. 348. 'The authority

of the legislature to ratify whatever it might have authorized is beyond question': Devers v. York City, 150 Pa. 208.    That there was power to authorize counties to construct highway tunnels within cities,......cannot be denied.    Indeed, in the decision declaring the Act [of 1909, supra] unconstitutional, the Supreme Court says [p. 92], 'It is not contended that the general assembly lacked authority to make these radical changes, but that the title here in controversy is not sufficiently clear to give notice of an intention so to do': County Commissioners' Petition, 255 Pa. 88.    Thus the [curative] Act of 1917, supra, is within the principle above enunciated."

The complainants attack practically all of the above quoted views and conclusions of the court below; but their chief contentions center around the thought that, when the Act of 1909, supra, was before us on the former appeal (255 Pa. 88), we then adjudged the present contract invalid, and, therefore, the legislature could not subsequently enact a law declaring to the contrary, without unduly encroaching upon judicial prerogatives; and they argue that the Act of 1917, supra, is such an encroachment.    This position is faulty for two reasons.    In the first place, while the result of our former adjudication was to  render ineffectual the tunnel contract here involved, yet that matter was not then in litigation and we passed no direct judgment thereon.    Next, the Act of 1917, supra, does not attempt or even pretend to validate the contracts therein referred to, in the sense of making them effective, or establishing them as subsisting binding obligations, according to their tenor, nor does the act undertake to declare the proceedings underlying such contracts legal, after we had ruled otherwise.    On the contrary, the legislation in question is based upon a recognition of the non-enforcibility of these contracts, and they are treated therein as mere moral obligations.    The whole statute is drawn upon the theory that the relief thereby afforded is made necessary by the illegality of the before-mentioned prior legislation and

all proceedings thereunder.   True, at one point, it does state that the contracts are made "valid and binding," but this language is immediately qualified by the remedial or curative part of the statute, which provides that recovery thereunder can be had only for work done before the unconstitutionality of the former legislation, upon which these contracts rest, was established, and that (as quoted hereinbefore) "nothing in this act shall be so construed as to make valid any......contract except to the extent that work was actually done and performed prior to the date on which said [legislation] was declared unconstitutional."   In other words, the essence of the law under attack is simply a legislative recognition that, when in any instance public work of the character described in the statute shall have been done under a contract having the color of validity, by reason of its authorization by act of assembly, and such act shall subsequently be declared unconstitutional, these circumstances shall give rise to a moral obligation, by virtue of which the statute requires the county which ordered the work in question to fulfil its promise of payment to the extent of any actual performance of the contract, up to the time that operations thereunder were brought to a stop by the adjudication of the invalidity of the prior authoritative legislation.   Briefly stated, the Act of 1917, supra, merely turns into enforceable demands what the legislature in its wisdom saw fit to consider moral obligations.   This course has been countenanced repeatedly as curative legislation; and, in the present instance, it is far from declaring the class of contracts referred to in the act before us to be valid, subsisting, legal obligations, to be enforced according to their tenor, which, of course, the legislature could not do without effectually remedying the faulty foundation upon which they rest.

The complainants contend, however, that to make the Act of 1917, supra, curative legislation, in the proper legal sense of that term, the present statute would have

to correct the errors of the prior authorizing act, which was declared unconstitutional; and, as a prerequisite to any recovery, even of money earned before the declaration of the invalidity of the other statute, the contractors would have to proceed with their work on a new and valid authorization under a curative act so drawn. Notwithstanding the able argument of counsel for appellants, as already indicated, we do not sustain these contentions. No matter how much support therefor may be found in other jurisdictions, they are not in accord with the trend of authority, particularly in Pennsylvania; for, in several instances, we have upheld the validity of curative legislation practically like that now under attack.

Donley v. Pittsburgh, 147 Pa. 349, is cited by appellants as an adjudication upon curative legislation correct in form; but it might better have been relied upon by the appellees, for an examination shows that the act in that case (May 16, 1891, P. L. 71) expressly validates and gives a right of recovery for improvements already made under old and void legislation; and, as a matter of fact, the proceedings there were to collect under the curative act for work which had been completed under a void statute. There, as noted in the opinion of this court, certain public improvements were made under legislation which was subsequently declared unconstitutional; "this left the city without power to collect ......the cost of the......improvements completed and in course of construction," and the statute attacked was passed to remedy this difficulty. The opinion in that case then states: "It was urged that this [curative] act does not apply, because the improvements in question were made under void acts of assembly, and without any authority whatever. If they had been made under competent authority, or a valid act of assembly, there would have been no need of curative legislation. The work having been done under void authority, and the property owners having received the benefits of the street improve-

ments, the legislature had the clear right to legalize what it might previously have ordered; that the legislature has the power to pass such remedial legislation is settled by abundant authority." If the law-making body has the right to enforce payment by property owners of claims such as the one involved in this Donley case, and we there decide it has such right, it has equal power to authorize payment by the counties of claims for work done in and about attempted public improvements, as ordained by the statute before us in the present case.

Another and perhaps even stronger authority for the appellee than the Donley case is Chester City v. Black, 132 Pa. 568. There a public improvement had been made under and by virtue of legislation which was subsequently declared to violate the Constitution. An act (May 23, 1889, P. L. 272) "was passed to meet this difficulty"; it provides for the assessment of the cost of work done under prior void statutes, and is expressly entitled, "An act authorizing assessments and reassessments for the costs of local improvements already made or in process of completion......" No provision is therein made for continuing or completing work already started under void acts, the curative statute being concerned entirely with the method of paying and recovering for work already done. The defendant was assessed, under the curative act, for part of the cost of an improvement which had been authorized and completed under the void act. He resisted payment on the ground that the curative act was unconstitutional. We held that, the original authorization and proceedings for the collection of the assessment being abortive, since the legislature had power to authorize the work and assessment, the curative act was valid and recovery could be had thereunder. Thus it may be seen that, in the case just cited, the defects in the void statutes were not attempted to be cured by the remedial act, but work done under the prior legislation was ratified and provision

made for the assessment and collection of the cost thereof.

The theory upon which curative acts of the nature of the one now before us have been sustained is briefly this: where the legislature has power to enact the substance of the matter covered by a statute which has been declared void because unconstitutional in form (as in the case at bar), it may subsequently ratify and make legal anything done under the prior void legislation which it might previously have authorized in due form: Devers v. York, 150 Pa. 208, 213.

In our previous case (255 Pa. 88) we decided the Act of 1909, supra, unconstitutional because of defects in title; then the Act of 1917, supra, was passed, saying that, where improvements had been made under the void act in question, the county affected shall pay the price of such portion thereof as was completed at the time the work was brought to a stop by the declaration of the invalidity of the prior legislation. It being within the power of the law-making body, in due and proper form, originally to have authorized the work in question, there can be no doubt of the legislature's right subsequently to ratify what it might have previously authorized, and this it does by the act now before us.

In addition to the authorities already cited, see also on the general subject in hand, Marshall Avenue, 213 Pa. 516; Mellick v. Williamsport, 162 Pa. 408; Bailey v. Philadelphia, 167 Pa. 569, 573; Rader v. Union Township, 39 N. J. L. 509, 519, 520. As to Kreusler v. McKees Rocks School District, 256 Pa. 281, it is sufficient to say the facts there are essentially different from those at bar and our decision in that case rests upon rules of law not here involved; the two cases in no sense conflict with each other. The other Pennsylvania cases cited by appellants do not rule the present one.

The assignment of error is overruled and the decree affirmed, at the cost of appellants.