## Alms v. Indiana County, Appellant.

*Game laws—Deputy game protectors—Compensation—Constables—Acts of March 22, 1889, P. L. 17 and April 11, 1903, P. L. 163.*

1. Deputy game protectors appointed under the provisions of the Act of April 11, 1903, P. L. 163, are not entitled to the reward of $10.00 payable to constables under the Act of March 22, 1899, P. L. 17, for securing a conviction for violation of the game laws.

2. If the Act of April 11, 1903, P. L. 163, should be construed as giving deputy game protectors the right to demand compensation from counties, the act would be unconstitutional, inasmuch as there is nothing in its title to indicate that counties theretofore exempt from paying anything to game protectors, were made liable for their compensation.

Argued May 3, 1910. Appeal, No. 179, April T., 1910, by defendant from order of C. P. Indiana Co., March T., 1910, No. 175, granting writ of mandamus in case of H. H. Alms v. Indiana County. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Petition for writ of mandamus. Before Telford, P. J.

138    ALMS *v.* INDIANA COUNTY, Appellant.

Statement of Facts—Opinion of the Court.    [45 Pa. Superior Ct.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order granting the writ.

*Ernest Stewart*, with him *D. H. Tomb*, for appellant.—
The Act of April 11, 1903, P. L. 163, is unconstitutional:
Dorsey's App., 72 Pa. 192; Beckert v. Allegheny, 85 Pa.
191; Quinn v. Cumberland County, 162 Pa. 55; Stegmaier
v. Jones, 203 Pa. 470 Dailey v. Potter County, 203 Pa.
593; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120;
Hays v. Cumberland County, 5 Pa. Superior Ct. 159.

No printed brief for appellee.

OPINION BY PORTER, J., March 3, 1911:

The appellee presented to the court below a petition set-
ting forth that he was a duly appointed and commissioned
"Deputy Game Protector" for the commonwealth, under
the provisions of the Act of April 11, 1903, P. L. 163, en-
titled, "An act to provide for the appointment of deputy
game protectors, for the Commonwealth of Pennsylvania,
and defining their duties;" that said act provides that
deputy game protectors, appointed under its provisions,
shall "receive the same compensation that constables now
receive for similar services;" that the Act of March 22,
1899, P. L. 17, provides that "Any constable or warden,
upon the arrest and prosecution of any offender to convic-
tion, under the provisions of this act, shall, in addition to
the fees to which he may be entitled under existing laws,
be paid for his services the sum of ten dollars on a warrant
to be drawn by the county commissioners on the county
treasurer, one-half of which shall be paid out of the county
treasury of the respective county, and the remaining half
of said reward shall be paid by the state treasury into the
county treasury &c.;" and that he, the appellee, as deputy
game protector, had, in separate proceedings, arrested
and prosecuted to conviction, before a justice of the peace

of the county of Indiana, three persons, stating their names, the nature of the proceedings and the magistrate before whom the prosecutions were held, "for violating the game law of May 1st, 1909, P. L. 325." The petition further stated that, by force of the legislation above recited, the relator had become entitled to receive from the county of Indiana the sum of $30.00, for which sum he had demanded from the commissioners of the county a warrant upon the county treasurer and that the commissioners had declined to pay said claim and refused to deliver to the petitioner a warrant for the same upon the county treasurer. The prayer was for a mandamus upon the commissioners of the county to deliver a warrant for the amount stated to the relator. The court below granted a rule upon the county commissioners who filed an answer denying liability for the claim, under the legislation referred to, and upon the further ground that the relator was indebted to the county in the sum of $26.99 for costs in a case in the court of quarter sessions of Indiana county, in which the grand jury had ignored the indictment and found that the costs should be paid by the prosecutor, this relator. The appellee demurred to this answer and the court thereupon issued a peremptory mandamus requiring the county commissioners to draw and deliver to the relator a warrant upon the county treasurer for the sum of $30.00. The county appeals from this decree.

The authorities representing the county contend that the Act of April 11, 1903, P. L. 163, does not impose upon counties the duty to pay to deputy game protectors a reward of $10.00 for each case in which such deputy may succeed in securing a conviction for violation of the game laws, and that if the body of the act can be so construed as to require such payment by the county, then the act is to that extent unconstitutional, for the reason that its title failed to give any indication that the statute contained such a provision. The statute is entitled, "An act to provide for the appointment of deputy game protectors, for the Commonwealth of Pennsylvania, and defining their

duties." The act contains but one section, the material provisions of which are as follows: "That the Board of Game Commissioners shall have the power and authority to appoint one or more competent men for each and every county of the Commonwealth of Pennsylvania to be called and designated as a Deputy Game Protector, who shall have the same power and perform the same duties as the present game protectors, authorized by law, now have and perform and receive the same compensation that constables now receive for similar services." The office of deputy game protector was a new one, created by this statute, which declares that they shall have the same power and perform the same duties as the present game protectors. The game protectors were at that time and still continue to be employees of the state; the powers and duties of the new officers thus created, deputy game protectors, were, therefore, those of employees of the state. The title of the act as well as the substance of the legislation render it impossible to classify these officers as anything but employees of the state. And they are to be appointed by a board of commissioners who are administrative officers of the commonwealth. The office of game protector had been created by the Act of June 25, 1895, P. L. 273, which provided for their appointment by the board of game commissioners, defined their powers and duties, and, in its fourth section, explicitly provided "That no commissioner, protector or other officer authorized by this act shall claim or receive any compensation for his services or for expenses incurred in the discharge of his duties." The third section of the same statute enacted that the "protectors" should receive, "for the use of the said board," one-half of all the fines and penalties collected in actions brought upon informations furnished by them. Thus it appears that even as to the one-half of the fines and penalties to which the informer was entitled, under various statutes, the game protectors received it for the use of the board of game commissioners, and not for themselves personally. The game protectors were

given extensive powers, but there were no revenues attached.  This was the condition of affairs until changed by the Act of May 21, 1901, P. L. 266, which in its fifth section enacted, "That the game protectors, so appointed, shall receive salary or pay per day, as may be agreed upon by the Game Commission, with expenses not to exceed two dollars per day outside of the traveling expenses; said expense account to be itemized and presented under oath."  This statute again provided that all money coming to any game protector as his part of any fine or penalty, under existing law, wherein he is the prosecutor, shall belong to the game commission.  This statute provided for compensation, by a fixed salary or a rate per day agreed upon, and it was to be paid by the state.  The counties never had been in any manner liable to pay these game protectors for their services, unless that liability arose as incidental to some service performed in legal proceedings, for which the county was made liable under some other statute.  The protectors were authorized to execute warrants, and search warrants and to serve subpœnas, they may have been entitled to the fees allowed by law for such services, and in some criminal proceedings the counties may have become liable to pay the costs. · The county could not be called upon to pay more than the legal fees for executing such writs, simply because they were executed by state employees.  When, therefore, the statute of April 11, 1903, was enacted the game protectors were not entitled to receive from counties any compensation or reward, the counties had nothing to do with their compensation, nor could the counties be required to pay them any reward for their efforts in securing the conviction of any offender.  The maintanance of the game protectors imposed no special burden upon the county treasuries.  The title of the act of April 11, 1903, gave notice that its effect was "To provide for the appointment of deputy game protectors, for the Commonwealth of Pennsylvania, and defining their duties."  This title referred to a subject with which counties before that time had had nothing to do,

there was nothing to even remotely indicate that the effect of the statute was to impose a burden upon the treasuries of the counties, and if it was the legislative intention to impose such a burden the title failed to express such intention and the act was to that extent unconstitutional: Quinn v. Cumberland County, 162 Pa. 55; Stagmaier v. Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120. There is certainly ground for gravely doubting whether it was the legislative intention to enact that these deputy game protectors should be entitled to receive the special allowance provided for constables under the provisions of the Act of March 22, 1899, P. L. 17. The statute last referred to imposed upon a constable the performance of duties which had not before that time appertained to his office. It enacted that constables "shall be ex officio fire, game and fish wardens" and imposed upon them active duties in this new capacity, extended their jurisdiction, for these purposes, throughout the county; required them the first week of each term to make report to court of all violations of any provisions of law for the protection of forests and timber land, game and fish, and made the failure to discharge these duties a misdemeanor punishable by fine and imprisonment. The title of this statute is "An act making constables of townships and boroughs ex officio fire, game and fish wardens, prescribing their powers and duties, fixing their fees as wardens, and prescribing their punishment for failure to perform their duties." The only compensation provided for the performance of these duties by this statute is in the fourth section, viz.: "Any constable or warden, upon the arrest and prosecution of an offender to conviction under the provisions of this act, shall, in addition to the fees to which he may be entitled under existing laws, be paid for his services the sum of ten dollars on a warrant drawn by the county commissioners on the county treasurer &c." The services which are by this statute provided for are for the services which the constables perform "as wardens," and the only cases

in which they are entitled to the payment of this sum of $10.00 are those which they prosecute "to conviction under the provisions of this act." A deputy game protector is authorized to do many things which a constable may do, such as the execution of a warrant or the serving of a subpœna, and for such services he may be entitled to the same legal fees allowed a constable. But he is not required to perform the same duties imposed upon a constable by the Act of March 22, 1899, nor is he liable to indictment because of his failure to perform such duties, nor can he recover the compensation to which a constable may become entitled when proceeding under that statute.

The decree of the court below is reversed at the cost of the appellee.