## Central Cambria School District v. County of Cambria

*Davis & Davis,* for plaintiff.

*Robert S. Glass,* County Solicitor, for defendant.

McDONALD, J., July 31, 1969.—Central Cambria School District (plaintiff herein) is comprised of Ebensburg Borough, Cambria and Jackson Townships.

In 1968, plaintiff adopted resolutions imposing an occupational privilege tax of $10 on all persons em-

ployed within the district, and an earned income tax of one-half of one percent on residents. These resolutions were adopted under the Local Tax Enabling Act of December 31, 1965, P. L. 1257, 53 PS §6901. Provisions in each resolution require employers within the district to deduct and withhold the tax from the wages of each employe who shall be liable, and make a return to plaintiff's tax collector. Penalties are imposed upon employers who fail to make a return. It has been stipulated by the parties the resolutions imposing the aforesaid taxes have been reenacted by plaintiff on May 5, 1969.

Plaintiff requested the Cambria County Commissioners to deduct the taxes from the wages of its employes who are subject to the resolutions. The county has failed to do so; hence, this action in equity which seeks a decree requiring it (1) to deduct from its employes the amount of tax owed by each; (2) to remit said amount to the tax collector; and (3) to hold defendant liable for all deductions not made, together with penalties and interest.

Defendant contends it is not an employer within the purview of the Act of 1965; the action properly should be mandamus; the act is unconstitutional as requiring a county to make such collections for the reason (a) section 9 thereof creates or imposes a debt and an unusual burden upon the county; (b) the title is not sufficient under art. III, sec. 3, of the Constitution; (c) the act is special and local legislation.

The matter was argued before the chancellor and, no testimony having been offered, we shall make our decision as a matter of law.

The Act of 1965 is, in effect, a reenactment of the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851, with many new provisions. There is no doubt plaintiff may, under the provisions of the act, impose an earned income tax upon residents and an occupa-

tional privilege tax on persons employed within its jurisdiction.

In section 6913-I, an "employer" is defined as "A person, partnership, association, corporation, institution, governmental body or unit or agency, or any other entity employing one or more persons for a salary, wage, commission or other compensation." This definition is found in the section relating to "earned income taxes." In (b) of subsection IV, sec. 6913, it is provided an employer may be required to deduct the earned income tax imposed and make return to the collector, and in (e) he is made liable for payment of the tax when he "wilfully or negligently fails or omits to make the deductions required by this section. . . ."

Section 6909 of the act, as passed in 1965, requires the Department of Community Affairs to maintain a register of all earned income taxes levied under the act, listing each by jurisdiction, rate, date of levy, etc. This section also authorized the various jurisdictions imposing the tax to require employers to withhold. In 1968, by Act No. 377, approved December 12, 1968, this section was amended by requiring the Department of Community Affairs to maintain a register also of occupational privilege taxes levied under the act, and further providing "Ordinances or resolutions imposing earned income or occupational privilege taxes under the authority of this act may contain provisions requiring employers doing business within the jurisdiction of the political subdivision imposing the tax to withhold the tax from the compensation of those of their employes who are subject to the tax: . . ."

The amendment of 1968, by empowering municipalities levying taxes to require "employers" to make deductions for not only the earned income tax, but also the occupational privilege tax, intended that the

definition of employer, as found in section 6913, should also apply to the occupational privilege tax, even though prior thereto it specifically related to the only type of tax which could be deducted at the source; i.e., the earned income tax. The legislature intends an entire statute to be effective: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52(2), 46 PS §552. The amendment relates the two taxes, both of which are susceptible of deduction at the source, and in our view must be read in light of the original act and construed with it. Thus, the definition of employer, which was only applicable to the earned income tax, now applies to the occupational privilege tax.

In Wilkinsburg Borough v. Wilkinsburg Borough School District, 365 Pa. 254, plaintiff sought compliance with its ordinance in requiring that an amusement tax be collected by defendant on admissions to its athletic events. The lower court required the deductions to be made. The Supreme Court, in reversing, held the Act of 1947 did not, by its terms or any reasonable inferences therefrom, grant a municipality the power to compel another municipality to collect taxes for its benefit. On page 257 it stated:

"Neither is there any question as to the right of the legislature to grant to a municipality the authority to impose a similar duty upon a coterminous school district. But certainly, if the legislature means to confer such a power, it must do so in clear and specific language."

Thus, the court held "Without express statutory consent, a municipality cannot impose upon the Commonwealth itself the duty of collecting a tax levied by the municipality . . . (or) impose such a duty upon any other political subdivisions or agency of the Commonwealth."

Thus, since the Act of 1947 contained no such "ex-

press statutory consent," neither a county nor any other political subdivision could be required to deduct the earned income tax or occupational privilege tax from its employes.

The Act of 1965, by its broad definition of "employer", clearly indicated a legislative intent to empower one municipality to require another as an employer to deduct the earned income tax.

In our opinion, the definition, in addition to covering municipal subdivisions, also includes a county. The county is "a political subdivision of the Commonwealth; not a municipal corporation . . . a branch of the general administration of that (State) policy: Carr v. Fuls, 286 Pa. 137, 145": Chester County v. Philadelphia Electric Company, 420 Pa. 422. It is also referred to as a "state agency": (Pennsylvania Turnpike Commission Land Condemnation Case, 347 Pa. 643), and "agency or subdivision of government," (Commonwealth v. Walker, 305 Pa. 31); "administrative units . . . making up the public system, Commonwealth v. Brice, 22 Pa. 211, 214 . . .": Hartness v. Allegheny County, 349 Pa. 248. The county is a governmental agency created to enforce the policy of the Commonwealth. "The Commonwealth has absolute control over such agencies, with powers to add to or subtract from the duties to be performed by them, or to abolish them and take the property used for public purposes without compensating the agency therefor": Pennsylvania Turnpike Commission Land Condemnation Case, supra.

In our view, the legislature by defining an employer as a "governmental body or unit or agency" was using the very language which describes the political status of a county, and clearly intended that its branch of government as an employer should be subject to the act.

The act is not local or special legislation and,

therefore, as argued by defendant, unconstitutional under article III, sec. 32, of the Constitution. It relates solely to the subject of taxation by municipal corporations, including school districts; it is Statewide, and the fact Cambria County is an employer within plaintiff's jurisdiction does not change the nature of the act. A like situation could occur in any of the 67 counties of the Commonwealth. The question of local or special legislation was laid at rest by English v. Robinson Township School District, 358 Pa. 45. In that case, the Act of 1947 was held to be constitutional. Since the Act of 1965 is, in effect, a reenactment of the Act of 1947, the rationale would be the same.

We are satisfied the title is not defective under article III, sec. 3 of the Constitution. This section provides: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." This section was intended to prohibit the practice of incorporating in one act a variety of distinct and independent subjects of legislation, and to exclude from a legislative enactment that which is secret and unrelated: Hadley's Case, 336 Pa. 100; Lehigh Navigation Coal Company v. Pennsylvania Public Utility Commission, 133 Pa. Superior Ct. 67. An act may contain any number of provisions properly connected with and germane to the expressed subject without violating the constitutional requirement that it contain no more than one subject clearly expressed in the title: Mallinger v. Pittsburgh, 316 Pa. 257. The purpose of the title is merely to give warning to the public and to the legislature of what may be actually found in the body of the act so as to lead to further inquiry, and it points only to the contents: Reber's Petition, 235 Pa. 622; Weiss v. Swift & Company, 36 Pa. Superior Ct. 376.

"The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. 'Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III' ": Gumpert's Estate, 343 Pa. 405, 407.

Again we refer to English v. Robinson Township School District, supra, which decided the title of the Act of 1947 clearly expressed the subject of legislation; i.e., the authority to levy, assess and collect certain taxes. It is noted the title to the Act of 1965 is strikingly similar to that of the Act of 1947, adding only a reference to new provisions, including "definitions" not included in the latter. The title to the amendment of 1968, verbatim that of the 1965 statute, adds to this title a provision with an additional reference to the registry of occupational privilege tax and collection at the source from employers. In the 1965 title, we find no substantive matter which is not included within the body of the act. The issue here is that of collection, and the title as amended in 1968 clearly refers to the subject of collection.

It is argued, however, the title fails to specifically state the county is included within the definition of "employer," and that it is now imposed with the burden of collecting taxes from its employes.

True, when legislation imposes a new burden upon the county, or a municipal subdivision, the title must clearly give notice of that fact. We have examined the cases holding to this rule and find a common denominator in all. The burden imposed in each was in the nature of a money obligation. It was not stated in the title, and/or the title was so misleading as not to give notice of the new burden: In re Road in the Borough of Phoenixville, 109 Pa. 44; Fedorowicz v. Brobst, 254

Pa. 338; Soldiers & Sailors Memorial Bridge, 308 Pa. 487; County Commissioners' Petition for the Construction of a Public Highway Tunnel, 255 Pa. 88; Comm. v. Berryman, 345 Pa. 222; Bennett v. Sullivan County, 29 Pa. Superior Ct. 120; Alms v. Indiana County, 45 Pa. Superior Ct. 137; Roush v. Northumberland County, 63 Pa. Superior Ct. 314; Lycoming Fair Assn. v. Lycoming County, 65 Pa. Superior Ct. 307; In re Petition of Riffles for Refund of License Fee, 74 Pa. Superior Ct. 410; Brunke v. Ridley Township, 154 Pa. Superior Ct. 182.

The act and its amendment do not impose a financial burden on the county. It is not liable for payment of damages or a charge which prior to the act was the liability of the Commonwealth or some other person or agency, as in the cases cited above. The act refers to the collection of taxes, and the obligation of employers to do so if required by resolution of the municipal subdivision. It is within the power of the legislature to authorize municipal subdivisions to require employers, whether they be individuals, partnerships, corporations or governmental units or agencies to deduct at the source and to make return thereof, taxes imposed under provisions of the act. That it may be more burdensome to a county than to another employer makes no difference, since the legislature has clearly intended to add this duty to other county functions.

We note, however, section 6913, subsec. IV(e), and provisions of the resolutions, hold the employers liable for a willful or negligent failure to collect the tax. We agree with respondent's argument that the county cannot be held liable in such case, if for no other reason than that the general rule of governmental immunity would prohibit this. Counties are but part of the

machinery that constitutes the public system: Commonwealth v. Brice, 22 Pa. 211. As such, it is clear in the exercise of a governmental function, the county cannot be held liable for the negligent or willful acts of its employes or officers: Bucher v. Northumberland County, 209 Pa. 618; Commonwealth v. Brice, supra. To hold otherwise would do great violence to the immunity doctrine. Even though we are satisfied a county is an employer under the provisions of the act, we do not read into it, nor can it be reasonably inferred, the legislature intended the county to assume the debt of another. We note the legislature, in permitting the collection of delinquent taxes from employes of the Commonwealth by payroll deduction (section 6920), has not allowed the taxing municipality to recover the tax itself upon failure to deduct, whereas it has allowed a forfeit against other employers: section 6919. A similar distinction also prevails in the Local Tax Collection Law of May 25, 1945, P. L. 1050, secs. 20 and 20.1, 72 PS §5511.20 and 5511.20a.

We are satisfied, therefore, the legislature did not intend that a branch of the Commonwealth would become liable for another's debt, contrary to the doctrine of immunity and the well-settled law that a county may not incur an obligation not authorized by statute: Bucher v. Northumberland, supra.

In view of our holding that defendant is not liable for deductions under the forfeiture and penalty provisions of the act and plaintiff's resolutions, we shall direct deductions from the wages of defendant's employes determined to be liable for the taxes effective with the pay period commencing August 1, 1969. The returns to plaintiff's tax collector of the taxes deducted shall be made as follows: The occupational

privilege tax on September 1, 1969; the earned income tax on October 31, 1969. Thereafter, and so long as the resolutions are reenacted by plaintiff, unless there is a change in the date or dates for making returns, the return shall be made as provided by the resolutions.

## DECREE NISI

Now, July 31, 1969, after argument and upon consideration of the record, stipulations and briefs, it is hereby ordered, adjudged and decreed:

1. Defendant, by its proper officers, shall deduct from the wages of its employes who are residents of plaintiff school district, from and after the pay period beginning August 1, 1969, the sum of one-half of one percent of said wages as earned income tax under resolution of plaintiff adopted May 5, 1969; and make return of said deductions to plaintiff's tax collector on October 31, 1969, and thereafter quarterly as required by the resolution and any reenactment thereof; and

2. Defendant, by its proper officers, shall deduct on or before August 31, 1969, from the wages of each of its employes who shall engage in an occupation within the limits of plaintiff school district, the sum of $10 as an occupation privilege tax; and make return of said deductions to plaintiff's tax collector on September 1, 1969, and thereafter returns shall be made in accordance with the resolution and any reenactment thereof; and

3. If no exceptions are filed within 20 days from notice of the filing of this adjudication, this decree nisi shall be entered by the prothonotary, on praecipe, as the final decree.